No. 15,053.

Jaeckel et al. *v.* Funk.
(138 P. [2d] 939)

Decided June 1, 1943.

Mr. EDWARD L. WOOD, Messrs. WOLVINGTON & WORM-WOOD, for plaintiffs in error.

Messrs. RINN & CONNELL, Mr. WILLIAM A. BLACK, for defendant in error.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

THESE parties appeared in reverse order in the trial court and are hereinafter referred to as there, or by name.

This action grew out of an automobile collision. Herman Jaeckel, Sr., and A. H. Francis were owners of the respective cars driven by their sons. They are not hereinafter directly mentioned. The sons, Herman Jaeckel, Jr., and Robert Roy Francis, are referred to as Herman and Robert respectively. Catherine Funk is referred to as Catherine and one Mary Jane McKee as Mary.

Herman, accompanied by Mary, was driving from Denver toward the city of Longmont in Boulder county. When a short distance south of that place he slowed down or stopped. Thereupon the car driven by Robert, who, accompanied by Catherine, was following, collided with the Jaeckel car and Catherine was injured. She brought this suit against the owners and drivers of both cars. On a verdict in her favor a joint and several judgment was entered against all defendants in the sum of $5,500. To review that judgment they prosecute this writ. The points relied upon for reversal are: 1. The

court's refusal to declare a mistrial because of the comment of court and counsel on insurance (assigned by all defendants); 2. the judgment against defendants Francis is unsupported by the evidence in view of the provisions of the "guest statute" (assigned by them); 3. the giving of instructions 1, 4, 5, 8, 10 and 12 (assigned by defendants Francis); 4. the giving of instruction No. 13 and the refusal of Jaeckels' tendered instructions 2, 3 and 4 (assigned by defendants Jaeckel).

Three major contentions underlie these assignments, disposition whereof disposes of some of them and obviates analysis and detailed discussion of others. They are: (a) There is no evidence that Herman was guilty of negligence; (b) there is no evidence that Robert was guilty of "negligence consisting of a willful and wanton disregard" of the rights of plaintiff; (c) the evidence establishes that Catherine was negligent. On each of these we disagree with defendants. A brief statement of facts is essential to disclose our reasons therefor. On every material point relating thereto there is conflict. We, of course, make no findings; we simply state what, from competent and material evidence, the jury was justified in finding and we are obliged to assume it did find.

The city of Longmont is about thirty-five miles north of Denver. On the morning of March 24, 1940, there had been an automobile wreck just south of a bridge about one mile south of Longmont. Approximately thirty people were gathered there, some of them near the highway and who, at any time, might have been upon it. On that morning Herman and Mary in one car and Robert and Catherine in the other left Denver for Longmont. Much of the distance they made at sixty-five miles per hour and not more than one hundred feet apart. Once, at least, each passed the other, one time at a much greater speed. At approximately half a mile from the bridge they saw the crowd gathered there. With little diminution of speed, glancing at the crowd and the wreck and

not at the road or each other and separated by less than fifty feet, they crossed the bridge. At that distance beyond it Herman stopped in the middle of the highway without giving any signal or glancing through his rear vision mirror. Then Robert discovered Herman's car standing, started to turn left, saw another approaching, swung back and crashed. The collision was terrific. One car was badly wrecked and the other practically reduced to junk. Plaintiff was dragged from the wreck unconscious, taken to a hospital, and confined to her bed for a month. Among her numerous and painful injuries was one to her head which brought on epilepsy, requiring constant care and treatment and from which she will probably always suffer. As indicating consciousness of wrongdoing, and minimizing the actual speed at which they had been traveling, Robert testified falsely as to the time of the accident and visited plaintiff in the hospital and sought to induce her to make false statements on the subject.

Section 189, chapter 16, '35 C.S.A., provides that where no special hazards exist a speed of sixty miles per hour on such a road as that in question is proper but proof of an excess thereof is "prima facie evidence * * * it is unlawful." Section 198, id., forbids the passing on the left of an overtaken car "unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead, * * *. In every event the overtaking vehicle must return to the right-hand side of the roadway before coming within one hundred feet of any vehicle approaching from the opposite direction." Section 201, id., provides that one driver must not follow another "more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway."

■ (a) From the foregoing, Herman's negligence is self evident. He exceeded the speed limit, paid no attention to Robert's car, stopped in the middle of the highway, and made no use of his rear vision mirror.

(b) Robert's negligence is equally apparent. Whatever else it was it was willful, and if wanton, his liability is fixed by section 371, id. The court told the jury it was wanton if, under the circumstances, it indicated "in and of itself to ordinary, intelligent and considerate persons a disregard of the safety of those liable to be affected thereby, or an indifference to the injurious consequences." Robert violated each of said sections 189, 198 and 201, supra. Beyond question the jury was justified in finding him guilty of willful and wanton negligence. *Millington v. Hiedloff,* 96 Colo. 581, 45 P. (2d) 937; *Foster v. Redding,* 97 Colo. 4, 45 P. (2d) 940. "If, conscious of his conduct and existing conditions, he knew, or should have known, that the injury would probably result, the requirements of the statute are met." *Clark v. Small,* 80 Colo. 227, 229, 250 Pac. 385; *Schlesinger v. Miller,* 97 Colo. 583, 586, 52 P. (2d) 402.

(c) It is doubtful if there is any evidence of contributory negligence on the part of plaintiff, but if so, that question was submitted to the jury by instruction No. 12 and resolved in her favor. Moreover defendants Francis did not plead contributory negligence on the part of plaintiff and tendered no instruction thereon.

While there is evidence that Herman's car was stationary, and Robert's making sixty miles per hour at the time of the impact, Robert says he was then traveling at fifteen to twenty miles per hour and Herman says he was traveling at the same speed. If both told the truth there was no accident and plaintiff's injuries are a figment of imagination. However, two disinterested witnesses, farmers returning by automobile from Longmont, who had stopped to inspect the previous wreck and were most favorably situated to observe the drivers and cars here involved, gave evidence which definitely established the gross negligence of both drivers. There is nothing in the record to cast the slightest doubt on their testimony. Hence the jurors were justified in concluding, as they apparently did, that both drivers testi-

fied falsely; that Herman was grossly negligent in stopping when and where and as he did, and that Robert was willfully and wantonly negligent in crashing into him when and where and as he did; and that, had either been exercising reasonable care, or even been chargeable with simple negligence only, plaintiff would not have been injured.

1. Counsel appearing here for the parties represented them on the trial. Rinn asked each juror on voir dire if he was a stockholder, officer, or agent of either of two named corporations, the title of one including the words "mutual automobile insurance." These interrogatories were not objected to. Wood asked the jurors collectively "If it should develop in this case that the question of insurance is involved would that make any difference in your verdict?" Rinn inquired of Wood, what kind of insurance? Wood answered that he was asking "If there should be any evidence * * * as to whether or not these defendants have insurance without stating what kind it was, as to whether or not that would influence the jury?" Rinn objected unless Wood specified the kind of insurance referred to. The court overruled the objection with the remark, "At the proper time the court is, of his own motion, going to instruct this jury relative to the question of insurance." Mary, a witness for Jaeckels, was cross-examined by Rinn. She answered, without objection, that she had been injured in the accident. "Q. Defendants have settled with you for your damages? A. Yes." Wormwood asked that the jury be instructed to "disregard the same. The Court: "Overruled, and the motion to strike the answer is denied." Re-direct by Wood: "Q. The Jaeckels made no settlement with you for your injuries did they? A. No, sir, it was carried out through the insurance company. Q. Did you make a claim against the Francis'? A. I believe that is the insurance company that settled. Q. You were paid for some bills * * * ? A. Yes, sir, the doctor bills were paid." Wormwood, having made

no objection to the foregoing: "We again wish to object to this line of testimony and ask that it be stricken and the jury instructed to disregard the same." The Court: "Gentlemen of the jury, I think the time has come for an instruction by the court on the question of insurance * * *. If you were not too dumb to be jurors, you must have known that there is, as the lawyers say 'insurance in this case' * * *. You may have suspected that the two sets of defendants are represented by insurance, and the two defendants are covered by different insurance companies." Thereupon the court fully explained the situation, directed the jurors as to their duty, told them the reason for the rule, explained that neither he nor they knew or could know what this insurance was or the extent of it, and emphatically instructed them that the whole subject must be scrupulously disregarded in arriving at their verdict. At the close of this instruction neither objection nor motion was interposed, but Wood asked for a recess and it was taken. Thereafter Wood, admitting the correctness of the statement made by the court, said that the court had gone beyond the evidence and advised the jury "that all of the defendants were insured." With this the court disagreed. Wood, however, asked for the declaration of a mistrial and was joined therein by Wormwood. Rinn resisted the motion, pointing out that he was in no way responsible for the interjection of the question. The motions were denied.

A careful notation of the way in which this insurance question crept into this case, the failure of counsel to object until the damage, if any, had been done, the voluntary statement of the witness Mary (always probable and rarely preventable), the prompt and effective action of the court, the assumption that jurors know as much as average mortals in this day and age about automobile accident insurance, lead irrevocably to the conclusion that this is a "tempest in a teapot," and that no error is disclosed by the record. If more is required a

single citation should satisfy the most skeptical. *Johns v. Shinall,* 103 Colo. 381, 387, 86 P. (2d) 605.

 3. Instruction No. 1 is objected to because the court did not therein go into details as to plaintiff's allegations of the extent of her injuries "as the evidence introduced has described such physical condition in considerable detail." The evidence did so and it was undisputed.

Instruction No. 4 is objected to because the court therein gave the statute concerning the passing of a car on the left. What we have said above clearly demonstrates the applicability of that statute.

Instruction No. 5 is objected to because of the court's statement therein that there was no evidence of any intention on the part of Robert to injure the plaintiff, or any intoxication; on the theory that this is a statement by the court that there was evidence of willful and wanton negligence. The implication was not justified, but if it was it was correct.

We think instruction No. 8 is correct, but since the objection to it is indefinite and amounts to nothing more than a general argument it does not support the assignment.

Instruction No. 10 is objected to because it fails to direct the jury as to the proper verdict if all defendants were guilty of simple negligence. Since in that case no recovery could be had against the defendants Francis they assign error as to them. The answer is that since there was ample evidence of the willfulness and wantonness of Robert, and the jury so found, no prejudice could result.

Instruction No. 12 told the jurors that if plaintiff was guilty of contributory negligence no recovery could be had against defendants Jaeckel. Defendants Francis assign error thereon because they were not included in the statement. Here again the finding of the jury that plaintiff was not guilty of contributory negligence makes

it clearly apparent that this error, if such it were, was not prejudicial.

4. The objection of defendants Jaeckel to instruction No. 13 is that it is "confusing and unintelligible." It is sufficient to say that the alleged defect is not apparent to us.

■ Tendered instructions numbered 2, 3 and 4 were admittedly requested for the purpose of stating the theory of defendants Jaeckel. They limited Herman's alleged negligence to the act of stopping, or suddenly decreasing his speed without giving an appropriate signal, but omitted three important and possibly controlling acts of negligence alleged in the complaint and which, if committed, would fix his liability, hence they were properly refused.

Finding no reversible error in the record the judgment is affirmed.

MR. JUSTICE GOUDY dissents.

MR. JUSTICE GOUDY dissenting.

I agree with the majority opinion except upon the question of the remarks of the trial court to the jury in regard to insurance, which I feel were entirely unwarranted. I appreciate that in recent years the feeling has grown that juries in general are aware that most automobile drivers carry insurance, and that many attorneys representing insurance companies are frank in revealing that fact to a jury. However, in the present case the trial court of its own motion emphasized the insurance feature in such manner as to bring the same sharply to the attention of the jurors, stating, as he did, that the two sets of defendants carried insurance in two different companies, the attorneys for which represented them on the trial. This, in my opinion, was prejudicial error.

The rule in this jurisdiction as to the question of insurance in personal injury cases should not, it appears to me, be extended by statements of trial courts, and

such extension should not receive the approval of this court. I do not agree with the majority opinion that this is not a serious question, but merely a "tempest in a teapot." Ordinarily, jurors look to trial judges as the source of knowledge, and I feel that the voluntary expression of the court here could not but influence the jury, and by this means turn this action into a controversy between plaintiff and the insurance companies, rather than between plaintiff and defendants on the merits.

For the reasons stated the judgment, in my opinion, should be reversed and a new trial granted.