No. 22501.

Michael P. Kenney and Mary Kenney *v*. Alice M. Grice.

(465 P.2d 401)

Decided February 24, 1970.     Rehearing denied March 16, 1970.

Wood, Ris & Hames, Thomas T. Crumpacker, for plaintiffs in error.

Donald W. Marshall, for defendant in error.

*En Banc.*

Mr. Justice Day delivered the opinion of the Court.

Alice Grice, plaintiff in the trial court, brought suit against Mary and Michael Kenney, defendants, who were her neighbors. The latter are here on writ of error directed to a judgment entered after a jury verdict against them and in favor of plaintiff in the amount of $8500.

The case arises out of an incident which occurred in the defendants' home. Plaintiff, while a guest there, fell

down a flight of stairs and sustained serious injury. She had ascended the staircase at the invitation of Mary to see some second floor rooms. Michael was not at home at the time.

After looking at the rooms, plaintiff attempted to descend the stairs, and the accident occurred. The stairway in question is, according to the evidence, steep, with narrow steps; the top step tread measuring only 6½ inches. It was from this step that plaintiff alleges she fell, though this was disputed.

The evidence reflects that plaintiff was holding her three-year-old son on her left hip at the time of the fall. She testified that she was holding on to the bannister with her right hand and proceeding very slowly. Her testimony includes the following account of what was said by the parties immediately before the accident:
"Mary, those steps look so steep; I won't let him [her son who had crawled upstairs after her] walk down them."
"Alice, be careful."
"Don't worry, Mary. I will."

After the fall, when plaintiff was sitting at the bottom of the stairs, she testified that the following took place: "* * * Mary came downstairs and she told me that she always goes down or she always went down those stairs sideways. And I said, 'Mary, now is a fine time to tell me.'"

Mary also testified that she always descends the stairway in question "sideways." Further, after the incident Mrs. Kenney said, "I came down very carefully myself, lest I fall on top of her."

The plaintiff testified that she did not notice the steepness of the stairs on the way up because she was following the defendant. Defendant's testimony was that she followed the plaintiff up. It is agreed that the stairs were well lighted at the time of the accident. Plaintiff alleges that she at no time noticed that the stair treads were narrow.

Defendants base their assignments of error on three

188

aspects of the case. On one — No. III — we reverse and comment on the others for guidance to the trial court on retrial.

I.

The defendants contend that the trial court erred in denying their motions for directed verdict at the close of all the evidence and in denying defendants' motion for judgment notwithstanding the verdict. The basis for each of these motions, they argue, was that the plaintiff failed to show a breach of any duty owed to Alice by the defendants and therefore no prima facie case of negligence was established.

We are faced, in what seems to be a case of first impression in Colorado, with the necessity of defining the duty to a social guest by a host with reference to the condition of the premises. Defendants herein urge that the proper standard of care to apply is that owed to a "licensee"; the plaintiff urges that the duty of care toward an "invitee" is the test by which to judge the defendants' responsibility.

█ In the case of a social guest it has been said: "Here is an invitee who is not an invitee." *See* 2 Harper & James, *The Law of Torts*, § 27.11 at 1476. Generally social guests have been classified as licensees. 2 *Restatement of Torts* 2d, §330 at 175.

We note, however, that there is a trend toward abolishing the arbitrary classification of "trespasser," "licensee," and "invitee" used in assessing the liability of an occupier of land. The case of *Rowland v. Christian,* 70 Cal. Rptr. 97, 443 P.2d 561, relying upon a negligence statute of California, exemplifies the trend toward applying ordinary principles of negligence in cases such as the one at bar.

"* * * The proper test to be applied to the liability of the possessor of land in accordance with section 1714 of the Civil Code is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others, and, although the plain-

tiff's status as a trespasser, licensee, or invitee may in the light of the facts giving rise to such status have some bearing on the question of liability, the status is not determinative."

See also *Taylor v. New Jersey Highway Authority,* 22 N.J. 454, 126 A.2d 313, 62 A.L.R.2d 1211; *Scheibel v. Lipton,* 156 Ohio St. 308, 102 N.E.2d 453.

The contention by the plaintiff in the case at bar that a social guest is an invitee according to Colorado law is not supported by the cases cited by him. The case law, though not specifically deciding the question, indicates that a social guest would heretofore have been considered a licensee in Colorado. *See Atkinson v. Ives,* 127 Colo. 243, 255 P.2d 749; *Field v. Sisters of Mercy,* 126 Colo. 1, 245 P.2d 1167.

■ However, even if plaintiff were classified as a "licensee" a *prima facie* case of negligence on the part of defendants was established. In our view the same would also be true were the defendants' liability to be considered in the light of general principles of negligence.

2 *Restatement of Torts* 2d at page 210, describes the liability of possessors of land in a situation such as in the case at bar to be as follows:

"§ 342. Dangerous Conditions Known to Possessor

A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,

(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and

(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and

(c) the licensees do not know or have reason to know of the condition and the risk involved."

The evidence of a *dangerous condition* on the premises of the defendant was not really disputed. The widths of

the treads on the stairway were irregular, varying from 8¾ inches in width to only 6½ inches. The narrowest, the 6½ inch wide tread, was the top step which allegedly precipitated plaintiff's fall. This stairstep was too narrow to support a person using it in the usual manner in which one steps forward with the foot pointing ahead. It was necessary, in order to secure adequate support, to place the foot "sideways" on the step. Plaintiff alleges that she was pitched down the stairway when, in the natural sequence of motion wherein her weight transferred from her heel forward to the ball of her foot, there was no support beneath the ball of her foot to sustain the weight of her body. Besides the testimony of the plaintiff as to the dangerous condition of the stairway, the jury was taken to the house to view the staircase.

There is no doubt that Mrs. Kenney knew of the condition herself. It is also clear that the defendant had reason to believe that plaintiff would not discover the condition or realize the risk and said, "Alice, be careful"; but did not add that the step was narrow and did not caution plaintiff to step sideways on the step. The danger which the plaintiff perceived was the steepness of the stairs. This she expressed to the defendant, and this apparently is what she was concentrating upon. Whether defendant's admonishment to be careful was an adequate warning in view of the twin hazards — the steepness plus the narrowness of the tread — is for the trier of the fact to determine. Applying to this case the test in *Rowland v. Christian, supra,* would pose the question, "Did Mrs. Kenney in the management of the property owned by herself and her husband act as a reasonable person in view of the probability of injury to Mrs. Grice?" That too would be a matter for the jury, so the court did not err in denying the motions for directed verdict or judgment notwithstanding the verdict.

II.

The defendants contend that instructions Nos. 1 and 7, particularly were improper. With reference to

No. 1, it was a recital of the pleadings and of the issues framed thereby. It could have been made more clear that everything set forth therein were the contentions and allegations of the parties, but the jury was cautioned that the instruction could not be considered as evidence established in the trial. The instruction could be improved and should be on retrial.

Instruction No. 7 was as follows:

"The liability of an owner or occupant of premises is predicated upon his superior knowledge of the condition thereof and the dangers, if any, to which the invitee may be subjected and of which he may be unaware. In this contention you are instructed that the plaintiff was an invitee upon the defendant's premises and that the defendant owed the plaintiff a duty to use reasonable care to give warning of hidden dangers, if any, or of dangers if any, not readily observable, in the exercise of ordinary care, by the invitee upon the premises."

The objection to the instruction is that it describes the plaintiff as an invitee whereas it is argued by the defendants that the plaintiff was a licensee. This again goes to the heart of our previous discussion on the first assignment of error. Regardless of the fact that the term "invitee" was used to describe the plaintiff, the instruction stated the law correctly, wherein it said that the defendant "owed the plaintiff a duty to use reasonable care to give warning of hidden dangers, if any, or of dangers, if any, not readily observable, * * *." *See Mathias v. Denver Co.,* 137 Colo. 224, 323 P.2d 624. *See also* Colorado Jury Instructions 12:10. Although not in use at the time of the trial, they nevertheless set forth proper instructions to be given in a case of a social guest together with annotations of authority.

Under the facts of this case, it is without dispute that Mary Kenney knew the steps were dangerous. A jury question was presented as to whether the danger was hidden or readily observable. Under the circumstances, the instruction was not so misleading as to be prejudicial.

On retrial the Colorado Jury Instructions will provide a pattern for the court.

### III.

Defendants urge as a final ground for reversal and a new trial that there was admission of evidence about insurance in this case which prevented them from having a fair trial. It is conceded that the jury on *voir dire* examination was given some hint of the interest of the insurance company in the case when the jurors were interrogated as to their possible connection with the named insurance carrier. Later, however, plaintiff, while giving a narrative account of the accident, and describing to the jury her efforts to get herself from the floor to defendants' car, made a volunteered statement, totally unrelated to the narrative, concerning insurance coverage as follows:

"* * * I scooted that chair to her front door that led to her sleeping porch. And I got there. She was by me at that time or a little bit ahead of me when I was scooting the chair across the floor, and she says, 'Alice, I have got insurance and Alice I have got insurance.' She kept it up."

Defendants' counsel asked for hearing not in the presence of the jury in which he first moved for a mistrial. The motion was denied, so counsel then moved the court to instruct the jury to disregard the statement. The court ruled that the testimony was admissible as "part of the *res gestae*" and denied the request for a cautionary instruction. The error was compounded when, upon resumption of Mrs. Grice's testimony before the jury, the court permitted the reporter to read to the jury plaintiff's statement to refresh their recollection as to the point when the testimony was interrupted for the *in camera* hearing. Objections to the reading of the testimony were overruled and again motions to strike the testimony and to instruct the jury to disregard the statement were denied.

Later on, while being cross-examined by defendants'

counsel, plaintiff volunteered the following statement in a nonresponsive answer:

"She knew from the day I got a 2-line letter from your insurance company that I was suing for my wages, and all that she had told me in the hospital that she would give me."

Again, the reporter was permitted to read back the question and the nonresponsive answer. Defendants, at the conclusion of the evidence, moved for a mistrial or, in the alternative, that the testimony relating to insurance be stricken and the jury be instructed to disregard it. These motions were again denied by the court. At the close of all the evidence, when instructions to the jury were being prepared, the defendants tendered an instruction cautioning the jury in its consideration of the insurance matters, which instruction was refused by the court.

▮ We strongly disapprove of the rulings of the trial court in this case. In the first place, the court erred in its ruling that the statement was part of *res gestae*. *Res gestae* is invoked as an exception to the "hearsay rule." Mrs. Grice's testimony was not "hearsay." The volunteered statement had no relation to the narrative account and should have been stricken.

The court in failing to caution the jury totally ignored and disregarded the instructions to trial courts to be found in *Johns v. Shinall,* 103 Colo. 381, 86 P.2d 605. This court in that case said:

"We are of the opinion that information that a defendant, in a case of this nature, carries liability insurance which is conveyed to the jury either intentionally or inadvertently should be dealt with by the trial court in the same manner as is any other inadmissible testimony. On motion it should be stricken and the jury instructed to disregard it. If requested, we think that a formal instruction as to its immateriality and the duty of the jury to disregard it in determining liability and damages might be given with propriety. * * *"

See also *Jaeckel v. Funk,* 111 Colo. 179, 138 P.2d 939.

Clearly, the situation here demanded prompt action by the trial court, as requested by the defendant, in striking the improper insurance references, coupled with an instruction that the jury disregard such references. The court's refusal in this regard on three occasions was error, and we cannot speculate that the jury was unaffected in its assessment of liability and its award of damages.

The judgment is reversed and the cause remanded for a new trial.

MR. JUSTICE PRINGLE not participating.