HÉCTOR GIERBOLINI RIVERA ET AL., demandantes y recurridos, *v.* EMPLOYERS FIRE INSURANCE COMPANY, demandada y recurrente.

*Número:* R-75-369        *Resuelto:* 18 de mayo de 1976

*Calderón, Rosa Silva & Vargas* y *David Rive Rivera,* abogados de la recurrente; *Plinio Pérez Marrero, Osvaldo Pérez Marrero* y *Agustín Mangual Hernández,* abogados de los recurridos.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

Un amigo invitó al señor Gierbolini Rivera a visitar su hogar. El señor Gierbolini, a instancias de su anfitrión, pasó al patio de la casa y al sentarse en un banco de madera, una pata de éste se hundió en la grama, yéndose de lado y provocando la caída del demandante recurrido, quien pesaba entonces 180 libras y medía 66½ pulgadas de estatura. El señor Gierbolini se fracturó el proceso coronoides de un codo. Los tratamientos de fisioterapia recibidos no han culminado en una recuperación total.

El tribunal de instancia concluyó que "[e]l banco ofrecía una apariencia de seguridad y no existía nada que indicase el riesgo o peligro que podía correr el demandante al tomar asiento en el sitio donde fue invitado a hacerlo." No obstante, el tribunal consideró que se había creado "una condición peligrosa al colocar un banco encima de una superficie blanda cual es la grama después que la lluvia ha debilitado la consistencia del terreno", que "el visitante de un establecimiento público tiene el derecho a suponer que se ha ejercitado el de-

bido cuidado para proveerle una estadía segura en el lugar" y que "No vemos razón alguna por la cual deba establecerse una regla distinta para el visitante de una residencia privada." Se condenó por tanto a la parte demandada a pagarle a la parte demandante diversas sumas por distintos conceptos, montantes a $16,265.00, más las costas y $2,500 por razón de honorarios de abogado. La parte demandada ha recurrido ante nos para la revisión de esta sentencia.

## I

■ Sirva este caso, antes que nada, para recalcar que el derecho de daños en Puerto Rico se rige, con contadas excepciones que nuestra legislación ha establecido, por las normas del derecho civil. Las reglas del derecho común y de otros sistemas jurídicos pueden constituir materia útil para el estudio comparado y en ocasiones el desarrollo de instituciones autóctonas. Hay instancias, de hecho, de convergencia o de deseo que ella ocurra, entre el derecho civil y el común en facetas de este campo. Di Prisco, Nicola, *Concorso di Colpa e Responsabilita Civile*, Napoli, 1973, pág. 422; Jardí, Enric, *La Responsabilitat Civil Derivada de l'Acte Il-lícit*, Barcelona, 1958, pág. 114. Se llega en ocasiones a la misma conclusión por caminos diferentes. No es permisible, sin embargo, intentar resolver nuestros problemas de daños a espaldas de la doctrina civil aplicable, sin que ello quiera decir que en todo momento sean ellas las más acertadas.

Situaciones como las que aquí nos ocupan ilustran lo expresado. La inclinación usual es a decidirlas a base de la antigua diferencia en derecho angloamericano entre la responsabilidad que se le debe a un *invitee*, un *franchisee* o *licensee* o a un *trespasser. Goose* v. *Hilton Hotels*, 79 D.P.R. 523 (1956). Esta distinción se desconoce por completo, sin embargo, en derecho civil y su importancia en el derecho angloamericano se está reduciendo perceptiblemente. En el caso específico del huésped la generalidad de la jurisprudencia norteamericana

continúa aceptando la terminología tradicional, pero ésta se halla bajo poderoso ataque. *Restatement of the Law Second, Torts*, vol. 2, 1965, pág. 175; Harper and James, *The Law of Torts*, vol. 2, 1956, pág. 1476 y ss.; Prosser, *Handbook of the Law of Torts*, 4th ed., 1971, pág. 378 y ss. Varios estados rechazan ya la clasificación consagrada del huésped. *Rowland* v. *Christian*, 443 P.2d 561 (Calif. 1968); *Kenney* v. *Grice*, 465 P.2d 401 (Colo. 1970); *Peterson* v. *Balach*, 199 N.W.2d 639 (Minn. 1972); *Alexander* v. *General Accident Fire and Life Ins. Co.*, 98 So.2d 730 (La. 1957); *Preston* v. *Sleziak*, 167 N.W.2d 477 (Mich. 1969). El propio Tribunal Supremo de Estados Unidos califica la distinción entre *"invitees"* y *"licensees"* como reliquia de la época feudal. *Kermarec* v. *Compagnie Generale Transatlantique*, 358 U.S. 625, 630–631 (1959). En Inglaterra se ha ido aún más lejos, habiéndose derogado por ley la diferencia entre *"invitees"* y *"franchisees"*. *The Occupiers' Liability Act*, 1957, 23 Halsbury's *Statutes of England*, 3rd ed., pág. 792 y ss.; Charlesworth, *On Negligence*, 4th ed., London, 1962, págs. 445–446. Para los antecedentes históricos de estos conceptos, véase: Marsh, *The History and Comparative Law of Invitees, Licensees and Trespassers*, 69 L.Q. Rev. 182, 359 (1953).

Dada la creciente inconformidad en el derecho angloamericano con las referidas diferencias, no es de extrañar que en regiones civilistas en íntimo contacto con el derecho común la doctrina se resista a aceptar con beneplácito dichos combatidos conceptos. Nadeau, *Traité de Droit Civil de Québec*, Montreal, vol. 8, 1949, pág. 157 y ss. Procede igualmente en nuestro caso que el problema ante nos se examine fundamentalmente bajo los supuestos del derecho civil.

## II

El Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, dispone que "El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el

daño causado. . . ." Este amplio principio ha generado intensas discusiones sobre la teoría de la culpa, siendo la culpa y la negligencia caras de una misma moneda pues, como señala Manresa, "la culpa requiere la ejecución de un acto positivo que cause un perjuicio a otra persona distinta de la que lo llevó a cabo, y a su vez la negligencia supone una omisión que produzca el mismo efecto, si bien ambas tienen de común el que el acto se ejecute o se incurra en la omisión sin intención nociva. . . ." 12 Manresa, *Comentarios al Código Civil Español*, 6ª ed., 1973, pág. 837. La fuerza lógica del concepto de la culpa aparenta ser imponente. Parece una ley de la naturaleza decir, expresa André Tunc, que se responde si hay culpa y si no, no. Tunc y otros connotados comentaristas han documentado extensamente, no obstante, la decadencia que ha venido experimentando el concepto de la culpa, en contraste con el proceso de continua expansión del concepto de la responsabilidad sin culpa. Tunc, André, "Fondements et fonctions de la responsabilité civile en droit français", publicado en Klein, Frédéric-Edouard, *Colloque franco-germano-suisse sur les fondements et le fonctions de la responsabilité civile*, Bâle et Stuttgart, 1973, pág. 7 y ss.; Viney, G., *Le déclin de la responsabilité individuelle*, 1965, *passim*.

La teoría del riesgo ha minado vitales sectores de los antiguos dominios de la culpa. Importa precisar los contornos generales de esta erosión, ya que de ello depende en buena medida la solución de la actual controversia.

■ La teoría del riesgo sostiene básicamente que "Todo el que mediante su actividad crea un riesgo de dañar a otro, debe ser siempre responsable de este daño, si se produce, sin necesidad de ninguna culpa personal." Orgaz, Alfredo, *La Culpa*, Buenos Aires, 1970, págs. 24–25. La teoría del riesgo se conoce también como la teoría de la responsabilidad sin culpa, del daño objetivo, del riesgo creado o el riesgo objetivo. Borrell Macía, *Responsabilidades Derivadas de Culpa Extra-*

*contractual Civil*, Ed. Bosch, Barcelona, 1942, pág. 6 y ss. Respecto a su naturaleza general, véanse: Traviesas, *La Culpa*, 13 Rev. Der. Priv. 273 (1926); Suss, *La evolución de la responsabilidad por riesgo en el moderno derecho alemán*, 27 Rev. Der. Priv. 54, 137 (1943); Martínez Sarrión, *"La responsabilidad objetiva como garantía patrimonial"*, 50 Rev. Der. Priv. 117 (1966); Lawson, *Negligence in the Civil Law*, Oxford, 1950, pág. 44 y ss. Esta doctrina se ha reconocido en determinadas circunstancias en nuestro país, pero sin que ello conlleve el rechazo del concepto de la culpa. *Mendoza* v. *Cervecería Corona*, 97 D.P.R. 499; *Rivera* v. *Caribbean Home Const. Corp.*, 100 D.P.R. 106 (1971). Lo mismo ha ocurrido, con similar circunspección, en España. Sentencias de 30 de junio de 1959, 5 y 9 de abril, 14 de mayo y 30 de octubre de 1963, el 15 de junio de 1967, el 11 de mayo de 1971, el 29 de mayo de 1972 y el 17 de noviembre de 1973; 12 Manresa, *op. cit.*, 840.

La teoría del riesgo se ha extendido a sectores de la responsabilidad civil en Francia, Alemania, Suiza, los países escandinavos, los países socialistas y otras regiones. André Tunc, *op. cit.*, 37. Debe recalcarse, no obstante, que la expansión gradual y continua de esta teoría no ha llevado en modo alguno en los países civilistas al abandono total del requisito de la culpa. Fernández Martín-Granizo, M.: *Los daños y la responsabilidad objetiva en el derecho positivo español*, Ed. Aranzadi, Pamplona, 1972, págs. 94–96. El rechazo por la doctrina de tal abandono es virtualmente unánime. Yung, Walter, "Principes fondamentaux et problemes actuels de la responsabilité civile en droit suisse", en Klein, *Colloque franco-germano-suisse. . . .*, supra, 137.

█ La teoría del riesgo se extiende usualmente, conforme a algunos autores, a actividades que son fuente para el autor de beneficio económico. Orgaz, A., *La culpa*, Buenos Aires,

1970, pág. 25; Fernández Martín-Granizo, *supra*, pág. 108 y ss. *Ubi emolumentum, ibi onus.* Deutsch hace hincapié en el riesgo técnico. Deutsch, Erwin, "Mécanismes fondamentaux de la responsabilité civile en droit allemand", en *Colloque . . .*, supra, 71. Tunc y otros la amplían para cubrir los accidentes de tránsito y daños que se absorban colectivamente. *Op. cit.* 25. El nuevo Código Civil de Portugal le da una solución tajante al problema en claro esfuerzo de detener el desarrollo por simple acción de los tribunales de la teoría del riesgo. Dispone el nuevo Art. 483, ordinal segundo: "Solo existe obligación de indemnizar sin que medie culpa en los casos especificados por ley." (traducción nuestra) *Código Civil*, Imprenta Nacional de Lisboa, 1966.

■ Apunta una tendencia minoritaria, tanto en derecho civil como en derecho común, a imponer responsabilidad si el daño causado es resultado de una actividad que permita calcular el riesgo y asegurarlo. Puig Brutau, *Fundamentos de Derecho Civil*, tomo II, vol. II, 1956, pág. 69; Tunc, André, 1973, *loc. cit.;* 2 Harper and James, *The Law of Torts*, 1956, pág. 1477. No hemos comprobado, sin embargo, bajo ninguna de las teorías reseñadas, que en el estado actual del derecho civil el daño sufrido por un invitado tenga que compensarse de todos modos, medie o no medie culpa. No ha alcanzado todavía esa frontera la teoría del riesgo, si bien es posible que la invada si las condiciones sociales y económicas llegasen eventualmente a exigirlo.

Es imprescindible por tanto en este caso, ya que no cabe la aplicación de la teoría del riesgo, explorar si incurrió o no en culpa el anfitrión del lesionado.

### III

■ Corresponde antes que nada que determinemos el criterio para precisar la existencia o ausencia de culpa en estas circunstancias. La regla generalmente aceptada es que se da

culpa cuando no se obra como un hombre de diligencia normal u ordinaria, un buen padre de familia, conforme a las circunstancias del caso. Sentencia de 22 de diciembre de 1928 (Esp.) ;. 12 Manresa, *op. cit.*, 849–850; Puech, Marc, *L'Illicéité dans la Responsabilité Civile Extracontractuelle*, Paris, 1973, pág. 52 y ss.; Rassat, *La Responsabilité Civile*, Paris, 1973, pág. 37; Visintini, G., *La Responsabilita Civile nella Giurisprudenza*, Padova, 1967, pág. 388; 6 *Encyclopédie Dalloz*, "Responsabilité du fait personnel", 1975, par. 41; Orgaz, *La culpa*, 1970, pág. 106. La corriente moderna concibe la culpa como un concepto social y objetivo, a distinción de la antigua culpa *in concreto*, donde se atendía a la capacidad del individuo en sí. Rassat, *supra*, 37. Lo determinante es cómo se hubiese desenvuelto en situación parecida un hombre de prudencia común u ordinaria. 6 *Encyclopédie Dalloz*, supra, par. 42. La culpa tiene en consecuencia naturaleza proteiforme; cambia como cambia el parecer de los hombres según las circunstancias de lugar y tiempo. La culpa, sin embargo, no abarca el simple error de juicio, las leves inadvertencias, los pequeños lapsos de atención que son parte de la condición humana. Scaevola, *Código Civil*, tomo XXXI, 1961, pág. 296; Puig Peña, *Tratado de Derecho Civil Español*, tomo IV, vol. II, 1951, pág. 575; Lombardi, *La Responsabilidad Extracontractual Civil en el Derecho Panameño*, Univ. de Panamá, 1965, pág. 76; Tunc, André, *op. cit.*, págs. 23–24.

Como puede apreciarse, la culpa es un concepto de tal plasticidad que permite, de no mediar el necesario rigor, hasta expandir a su amparo subrepticiamente la propia teoría del riesgo y dejar la propia doctrina de la culpa en mero cascarón. Basta con declarar previsible por un hombre de prudencia común un daño específico y comenzar a extender así a un campo nuevo el concepto de la responsabilidad sin culpa. Esta flexibilidad del concepto de la culpa es deseable; de otro modo se anquilosaría el derecho de la responsabilidad extracontractual. Del otro lado, la expansión debe ocurrir

tan solo después de una discusión franca y abierta de los valores en juego y de la situación socioeconómica envuelta.

Hay muchas preguntas que hacerse en este último sentido. ¿Cuál es la extensión de los seguros en el nuevo campo? (1) ¿Basta con que existan seguros individuales aislados o debe establecerse un seguro colectivo para la distribución más amplia del riesgo? ¿Qué impacto social tiene en el sistema de valores del país concernido una extensión determinada de la responsabilidad sin culpa? ¿Hasta qué punto debe encomendarse la consideración de estos problemas al poder legislativo, como en el derecho civil portugués, al menos preferentemente? (2)

En el caso de autos, es cierto que el banco permaneció en la grama después de haber llovido. El banco aparecía seguro, no obstante, no existiendo nada que le indicase al anfitrión y a sus invitados la presencia de un riesgo. No hemos hallado en el derecho civil jurisprudencia o expresiones doctrinales que juzguen que la conducta del anfitrión en un caso de esta naturaleza rebasa de tal modo la norma de conducta aceptable para el hombre común en circunstancias parecidas que deba imponérsele responsabilidad.

*En consideración a lo expuesto, se revocará la sentencia de que se recurre.*

Los Jueces Asociados, Señores Torres Rigual, Díaz Cruz y Negrón García, concurren en el resultado.

---

(1) No existen datos sobre el particular en la Oficina del Comisionado de Seguros de Puerto Rico.

(2) Véase lo sucedido en el campo de los accidentes automovilísticos y del trabajo. Ley de Protección Social por Accidentes de Automóviles, Núm. 138, de 26 de junio de 1968, según enmendada, 9 L.P.R.A. sec. 2051 y ss.; Art. 404 del Código Político, 3 L.P.R.A. sec. 422; Ley de Compensación por Accidentes del Trabajo, Núm. 45, de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 1 y ss.; Ley Núm. 77 de 23 de junio de 1958, 11 L.P.R.A. sec. 61 y ss.; Ley de Beneficios por Incapacidad, Núm. 139, de 26 de junio de 1968, según enmendada, 11 L.P.R.A. sec. 201 y ss.