Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL (I)

| WANDA RODRÍGUEZ CASTRO<br><br>Apelada<br><br>v.<br><br>LORNA IVONNE REYES ROSARIO<br><br>Apelante | KLAN202300605 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Guaynabo<br><br>Civil núm.: GB2021CV00122<br><br>Sobre: Daños y Perjuicios |
|---|---|---|

Panel integrado por su presidente el juez Sánchez Ramos, el juez Rivera Torres y el juez Salgado Schwarz.

**Rivera Torres, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 12 de marzo de 2024.

Comparece ante este tribunal apelativo la Sra. Lorna Ivonne Reyes Rosario (señora Reyes Rosario o la apelante) mediante el recurso de apelación de epígrafe y nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (el TPI), el 2 de mayo de 2023, archivada en autos el 5 del mismo mes y año. Mediante este dictamen, el foro primario declaró *Ha Lugar* a la demanda instada por la Sra. Wanda Rodríguez Castro (señora Rodríguez Castro o la apelada) y condenó a la apelante a pagar $22,400 por angustias mentales, más $2,000 en honorarios de abogado.

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

**I.**

El 22 de febrero de 2021, la señora Rodríguez Castro instó la presente demanda sobre daños y perjuicios en contra de la apelante. Alegó que esta última instó un patrón de hostigamiento, amenazas e imputaciones falsas que le afectaron su reputación, el negocio; así

como la tranquilidad. Esto, a raíz de la venta de un bizcocho que le fue entregado a la apelante en perfectas condiciones, pero aún así esta criticó en redes sociales "Facebook", la forma en que lo recibió y a su vez, exhortó a que nadie hiciera negocios con ella. Adujo, además, que en una conversación telefónica que sostuvieron, la señora Reyes Rosario le expresó que le iba a "joder" y a destruir el negocio. Añadió que posterior a esa comunicación comenzó a recibir llamadas de carácter intimidatorio e insultantes que le afectaron su paz y tranquilidad. Estimó sus daños en $50,000. La señora Reyes Rosario contestó la demanda negando los hechos esenciales.

Luego de varios trámites procesales, el 23 de agosto de 2022, se celebró el juicio en su fondo. Aquilatada la prueba testifical y documental el TPI dictó la *Sentencia* apelada consignando las siguientes *Determinaciones de Hechos*:[1]

1. La demandante Wanda Giselle Rodríguez Castro, reside en el municipio de Guaynabo. Se dedica a la venta de bizcochos, "catering" y preparación de actividades. Opera desde un local ubicado en la avenida Esmeralda en Guaynabo de nombre "Waleska's Cake". Lleva siete (7) años en ese local y 31 años de experiencia.

2. El 28 de noviembre de 2020, la demandada, Lorna Ivonne Reyes Rosario le solicitó a la demandante la preparación de un bizcocho, entregando las especificaciones para ello. La demandante manifestó que **haría todo lo posible por sacar el color solicitado lo que no se logró**. La demandante preparó una orden por el bizcocho según solicitado por un valor de $217.43, incluyendo el impuesto de ventas y uso. La demandada entreg[ó] un depósito de $100.00 y posteriormente completó el pago de lo adeudado.

3. El 5 de diciembre de 2020, una joven de nombre Stephanie recogió el bizcocho. La demandada no estaba presente durante la entrega. La demandante tom[ó] una foto antes de entregarlo. **El bizcocho se encontraba en perfectas condiciones y de color similar al solicitado**. Le indic[ó] a Stephanie la forma y manera que debía transportar el bizcocho para que no se afectara. La fotografía marcada como Exhibit 1 del demandado refleja las condiciones en las que fue entregado.

4. Al lunes siguiente, un cliente de nombre José le informa a la demandante que en las redes sociales se están publicando informaciones negativas. **Recibe fotos que salen en las redes y estas no reflejan las condiciones del bizcocho que se**

---

[1] Véase el Apéndice del Recurso, Apéndice 3. Énfasis nuestro.

**entregó a Stephanie**. José, quien trabajaba con Stephanie, indica que la llame. Véase Exhibit 2.

5. Cualquier daño recibido por el bizcocho ocurrió luego de que la demandante entregara el mismo.

6. En la conversación que la demandante sostiene con Stephanie, esta le solicita el reembolso. La demandante manifiesta que no procede un reembolso ya que los daños ocurrieron por el mal manejo del producto. Sin embargo, le manifiesta que le informe a Lorna, la demandada, que la llame.

7. Luego de conversar con Stephanie, la demandante, mediante llamada telefónica, **sostuvo una conversación con la demandada**. La segunda amenazaba con realizar publicaciones en las redes, indicándole **que "jodería" su negocio y que tenía gente para hacerle daño**.

8. Luego de esta conversación, **comenzaron los ataques mediante llamadas telefónicas y en la red "WhatsApp". Las llamadas eran constantes, incluyendo de madrugada, lo que llev[ó] a la demandante a presentar una querella a la Policía**.

9. La vida ordinaria de la [demandante] **cambi[ó] por motivo de los ataques recibidos a su tranquilidad y reputación**.

10. Las llamadas sobre comentarios negativos alteraban sustancialmente su paz y tranquilidad. **La vida de la parte demandante cambi[ó] dramáticamente**, lo que provocó que tuviera que cambiar su horario. Sus ingresos disminuyeron sustancialmente, de $25,000.00 a $12,000.00 en un mes.

11. La demandada no conoce el resultado ni si se realizó una investigación de naturaleza criminal.

A su vez, el foro apelado razonó lo siguiente:[2]

[...]
En el presente caso, **nos mereció credibilidad el testimonio de la demandante**. La parte demandada, en esencia, declaró que las condiciones del bizcocho no fueron las pactadas, testimonio que no nos mereció credibilidad. **La persona que recogió el bizcocho fue la responsable de los daños causados a este**.

De la evidencia presentada este Tribunal puede concluir que **las actuaciones de la demandada fueron la causa directa de las publicaciones y llamadas** de las que fue objeto la parte demandante. Dichas publicaciones son claramente falsas y **no albergamos duda alguna en cuanto quien es la persona responsable que inició la cadena de eventos que culminaron en las publicaciones y sin cuya acción estas no hubieren ocurrido**. La demandada **advirtió y amenazó a la demandante con tales publicaciones**. Eventos que, según la prueba, comenzaron a ocurrir antes de que las partes sostuvieran su conversación telefónica. El Tribunal observó a la demandante **visiblemente afectada por la forma en que ha cambiado su vida** luego de las llamadas y publicaciones calumniosas. En cuanto a la pérdida de ingreso, entendemos que la prueba desfilada no fue suficiente para realizar una determinación favorable sobre el particular. [...].

---

[2] *Íd.* Énfasis nuestro.

Cónsono con lo anterior, y en cumplimiento con el mandato jurisprudencial, el TPI valoró los daños utilizando como referencia lo resuelto por esta *Curia* en *Ponce Ramos v. Vélez*, KLAN201400369, ya que allí se trataba de una demanda por difamación utilizando la red social "Facebook". En este la compensación concedida fue $20,000 y atemperada al valor presente, el foro apelado concedió en compensación $22,400. Asimismo, el juzgador imputó temeridad a la señora Reyes Rosario por entender que esta hizo "innecesario un pleito que pudo evitarse ...".

Inconforme, la apelante solicitó la reconsideración del dictamen. El 14 de junio de 2023, el TPI declaró *No Ha Lugar* el petitorio.[3]

Aún insatisfecha, la señora reyes Rosario acude ante este foro apelativo mediante el recurso de epígrafe imputándole al TPI haber incurrido en los siguientes errores:

> EL HONORABLE TRIBUNAL DE INSTANCIA DETERMINÓ LA CUANTÍA DE $22,000.00 DÓLARES COMO COMPENSACIÓN DE DAÑOS Y PERJUICIOS A FAVOR DE LA DEMANDANTE-APELADA (APÉNDICE 3). INDEPENDIENTEMENTE DE LA CREDIBILIDAD QUE LA HAYA DADO EL HONORABLE JUEZ SENTENCIADOR NO HUBO EVIDENCIA ALGUNA DE QUE SI HUBO ALGÚN DAÑO POR LOS MENSAJES Y REDES SOCIALES [ESTOS] HAYAN SIDO GENERAD[O]S U AUTORIZAD[O]S POR LA PARTE DEMANDADA-APELANTE. ES DECIR[,] QUE NO SE DEMOSTRÓ LA RELACIÓN CASUAL REQUERIDA EN NUESTRO ORDENAMIENTO JURÍDICO.
>
> EL HONORABLE TRIBUNAL DE INSTANCIA DETERMINÓ QUE LA PARTE DEMANDADA-APELANTE HABÍA SIDO TEMERARIA Y EN SU CONSECUENCIA LE IMPONÍA EL PAGO DE HONORARIOS DE ABOGADO.

El 21 de julio de 2023, emitimos una *Resolución* concediendo término a las partes para la notificación y estipulación de la Transcripción de la Prueba Oral (TPO). Además, determinamos los plazos para presentar los alegatos suplementarios y el de oposición de la parte apelada. Luego de varios trámites ante nuestra

---

[3] Véase, Sistema Unificado de Manejo y Administración de Casos (SUMAC), Entrada Núm. 55.

consideración, el 29 de noviembre de 2023 dimos por estipulada la TPO.

Asimismo, se le concedió una prórroga a la parte apelante, hasta el 25 de enero de 2024, para presentar el alegato suplementario. En esa fecha, se cumplió con lo ordenado, por lo que nos damos por cumplidos. Posteriormente, y luego de concedida la prórroga solicitada, el 8 de marzo de 2024 la parte apelada presentó el alegato en oposición por lo que decretamos perfeccionado el recurso. Destacamos que en el referido alegato la parte apelada nos vuelve a solicitar la desestimación del recurso por los mismos planteamientos que ya fueron declarados *No Ha Lugar* en la *Resolución* del 21 de febrero de 2024.

Analizados los escritos de las partes, el expediente apelativo y la TOP; así como estudiado el derecho aplicable, procedemos a resolver.

**II.**

**Daños y Perjuicios**

El Artículo 1815 del Código Civil de Puerto Rico, 31 LPRA sec. 11720, establece que la responsabilidad extracontractual se determina a base de la ley vigente en el momento en que ocurrió el acto u omisión que dio lugar a dicha responsabilidad. En este sentido, es importante apuntalar que los hechos que motivaron la presente causa de acción surgieron el 5 de diciembre de 2020, vigente este nuevo cuerpo legal.

El Artículo 1536 del Código Civil de Puerto Rico 2020, 31 LPRA sec. 10801, dispone que la persona que por culpa o negligencia cause daño a otra, viene obligada a repararlo.[4] Para que prospere una reclamación por daños y perjuicios, al amparo del referido precepto legal, se requiere la concurrencia de tres

---

[4] Análogo al Artículo 1802 del derogado Código Civil de 1930.

elementos, los cuales tienen que ser probados por la parte demandante: (1) el acto u omisión culposa o negligente; (2) la relación causal entre el acto u omisión culposa o negligente y el daño ocasionado; y (3) el daño real causado al reclamante. *Nieves Díaz v. González Massas*, 178 DPR 820 (2010).

El acto culposo o negligente se define como la falta del debido cuidado, según la figura de la persona de prudencia común y ordinaria. *López v. Porrata Doria*, 169 DPR 135, 150-151 (2006); *Gierbolini v. Employers Fire Ins. Co.*, 104 DPR 853, 860 (1976). Sobre la culpa, el más alto foro ha reiterado que consiste en no anticipar las consecuencias racionales de un acto u omisión. *López v. Porrata Doria*, 169 DPR 135, 151 (2006); *Toro Aponte v. E.L.A.*, 142 DPR 464, 473 (1997). En cambio, la responsabilidad civil extracontractual producida por omisiones negligentes surge cuando el "[a]legado causante del daño quebranta un deber impuesto o reconocido por ley." *Hernández Vélez v. Televicentro*, 168 DPR 803, 813 (2006).

El daño constituye el menoscabo material o moral que sufre una persona, ya sea en sus bienes vitales naturales, en su propiedad o en su patrimonio, causado en contravención a una norma jurídica y por el cual ha de responder otra persona. En nuestro ordenamiento jurídico se reconoce la existencia de dos tipos de daños: los especiales, conocidos como daños físicos, patrimoniales, pecuniarios o económicos, y los generales, conocidos como daños morales. *Nieves Díaz v. González Massas*, supra, a la pág. 845.

Por último, en nuestro ordenamiento jurídico, ha sido reiterada en variadas ocasiones la doctrina de causalidad adecuada, la cual establece que *no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general. Pérez et al. v. Lares Medical et al.,* 207 DPR 965, 976-977 (2021). Este concepto de la causa postula,

además, que la ocurrencia del daño que da base a la reclamación era previsible dentro del curso normal de los acontecimientos. *López v. Porrata Doria,* supra, a la pág. 152.

**Libelo y Calumnia**

Nuestro ordenamiento reconoce la existencia de una causa de acción por difamación. Para prevalecer, el demandante tendrá que probar que: (1) la información es falsa, (2) en el caso de figuras públicas, que se publicó con malicia real y en caso de figuras privadas, que la publicación se hizo negligentemente y (3) que se causaron daños reales. *Torres Silva v. El Mundo, Inc.*, 106 DPR 415, 427 (1977). De este modo, nuestro ordenamiento jurídico le reconoce al perjudicado el derecho a defender su nombre ante los demás protegiendo las relaciones que sostiene con terceros; la probabilidad de relaciones futuras; su imagen pública en general y evitando una futura imagen pública negativa. *Soc. de Gananciales v. El Vocero de P.R.*, 135 DPR 122, 126-127 (1994).

De otra parte, el más alto foro ha resuelto que, como parte de su defensa, el demandado podrá probar de forma afirmativa que la información publicada no es difamatoria, sino que es verdadera. Además, podrá presentar prueba de que fue diligente al publicar la información o que la publicación no causó daños al demandante. *Pérez v. El Vocero de P.R.*, 149 DPR 427, 446 (1999).

Ahora bien, para que proceda una causa de acción por difamación, en su modalidad de libelo, se requiere además que exista un récord permanente de la expresión difamatoria en unión a los otros elementos de la causa acción. *Íd.*, a las págs. 328-329.

Finalmente, la acción de difamación requiere la identificación específica del demandante en la publicación. Es decir, aquel tiene que probar que las manifestaciones libelosas se referían directamente a él. *Colón, Ramírez v. Televicentro de P.R.*, 175 DPR

690, 723 (2009); *Soc. de Gananciales v. El Vocero de P.R.*, supra, a la pág. 128; *Rosado v. Fluor International*, 81 DPR 608, 614 (1959).

**La Regla 110 de las Reglas de Evidencia**

En los casos civiles, la decisión del juzgador "se hará mediante la preponderancia de la prueba, a base de criterios de probabilidad." Regla 110(F) de las Reglas de Evidencia, 32 LPRA Ap. VI, R. 110(F). Quien sostiene la afirmativa deberá probar su causa de acción mediante la presentación de evidencia que sustente cada una de sus alegaciones. Regla 110(A) de las Reglas de Evidencia, *supra.* Sin embargo, **el testimonio vertido por un solo testigo es suficiente para satisfacer el grado de prueba requerido, si logra convencer al juzgador.** Regla 110(D) de las Reglas de Evidencia, *supra.* Ello es así porque "[l]a preponderancia de la prueba no se refiere naturalmente al número de testigos ni a la cantidad de documentos. Denota la fuerza de convicción o de persuasión de la evidencia en el ánimo del juzgador." *Carrión v. Tesorero de P.R.*, 79 DPR 371, 382 (1956).

Según surge de la Regla 110(H) de las Reglas de Evidencia, *supra*, cualquier hecho en controversia es susceptible de ser demostrado mediante evidencia directa o mediante evidencia indirecta o circunstancial. Asimismo, dicha regla define *evidencia directa* como "… aquella que prueba el hecho en controversia sin que medie inferencia o presunción alguna y que, de ser cierta, demuestra el hecho de modo concluyente. Evidencia indirecta o circunstancial es aquella que tiende a demostrar el hecho en controversia probando otro distinto, del cual por sí o, en unión a otros hechos ya establecidos, puede razonablemente inferirse el hecho en controversia." *Íd.*

**La temeridad**

La Regla 44.1 (d) de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1 (d), establece que en un caso ante el Tribunal

de Primera Instancia en que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta.

El Tribunal Supremo ha definido el concepto de temeridad como aquella conducta que promueve un pleito que se pudo obviar, lo prolonga innecesariamente, o que obliga a una parte a involucrarse en trámites evitables. Dicho de otro modo, se entiende que un litigante actúa con temeridad cuando por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito. *Maderas Tratadas v. Sun Alliance, et al.,* 185 DPR 880, 925-926 (2012). Esta penalidad tiene como propósito disuadir la litigación frívola; así como fomentar las transacciones, a través de sanciones que compensen a la parte victoriosa de los perjuicios económicos y las molestias ocasionadas por la temeridad desplegada por otra parte en el caso. *Íd.*, a la pág. 926.

La evaluación de si ha mediado o no temeridad, **recae sobre la sana discreción del tribunal sentenciador** y sólo se intervendrá con ella en casos en que dicho foro haya abusado de tal facultad. Sin embargo, una vez fijada la existencia de temeridad, la imposición del pago de honorarios de abogado es mandatoria. *Íd.* La cuantía se mide en virtud de: (1) el grado de temeridad que ha existido; (2) la naturaleza del procedimiento; (3) los esfuerzos y la actividad profesional que haya tenido que desplegarse; y (4) la habilidad y reputación de los abogados. *Corpak, Art Printing v. Ramallo Brothers,* 125 DPR 724, 738-739 (1990).

**La apreciación de la prueba y el estándar de revisión apelativa**

Es norma trillada que, en ausencia de error, prejuicio o parcialidad, los tribunales apelativos no intervendrán con las determinaciones de hechos, con la apreciación de la prueba, ni con la adjudicación de credibilidad efectuadas por el Tribunal de Primera Instancia. *González Hernández v. González Hernández*, 181 DPR 746, 776 (2011); *Ramírez Ferrer v. Conagra Foods PR,* 175 DPR 799, 811 (2009). Esta norma de deferencia judicial descansa en que el juez ante quien declaran los testigos es quien tiene la oportunidad de verlos y observar su manera de declarar, apreciar sus gestos, titubeos, contradicciones y todo su comportamiento mientras declaran; factores que van formando gradualmente en su conciencia la convicción sobre la verdad de lo declarado. *Suárez Cáceres v. Com. Estatal Elecciones,* 176 DPR 31, 68 (2009).

### III.

La apelante señaló que el foro de primera instancia incurrió en dos (2) errores. En el primer error, precisó que no hubo evidencia respecto a que los mensajes en las redes sociales y las llamadas fueron originados por la apelante ni los daños que estos provocaron.

Conforme surge del dictamen apelado, el TPI **concedió entera credibilidad al testimonio de la apelada**. Por ende, aquilatado dicho testimonio el foro apelado consideró como hechos probados que: (a) la apelante acudió al negocio de la apelada para ordenar un bizcocho para la boda de su hijo; (b) que la apelada se comprometió a sacar el color solicitado (*sage*); (c) que el bizcocho fue recogido por otra persona, una joven de nombre Stephanie; (d) el bizcocho se encontraba en perfectas condiciones al momento de la entrega y de color similar al solicitado; (e) las fotos que salen en la red social (Facebook) no refleja la condición del bizcocho que se entregó a Stephanie; (f) cualquier daño recibido por el bizcocho ocurrió luego de que la demandante entregara el mismo; (g) la apelante amenazó

a la apelada con realizar publicaciones en las redes, indicándole que "jodería" su negocio y que tenía gente para hacerle daño; (h) luego de esa conversación, comenzaron los ataques mediante llamadas, telefónicas y en la red "WhatsApp"; (i) las llamadas eran constantes, incluyendo de madrugada, lo que llevó a la señora Rodríguez Castro a presentar una querella a la Policía; (j) la vida ordinaria de la apelada cambió dramáticamente por los ataques recibidos a su tranquilidad y reputación, lo que provocó que tuviera que cambiar su horario; (k) las llamadas sobre comentarios negativos alteraban sustancialmente su paz y tranquilidad. Los que, a nuestro juicio, no fueron controvertidos por la apelante.

A su vez, el foro primario consignó que observó a la apelada **visiblemente afectada por la forma en que ha cambiado su vida luego de las llamadas y publicaciones calumniosas**.

Como señalamos, la señora Reyes Rosario argumentó, en el recurso, que no existe prueba alguna de que las llamadas y mensajes en las redes sociales fueron originadas por ella. Sin embargo, durante el contrainterrogatorio esta admitió que "sus amistades" le advirtieron de la situación **que su mensaje** había generado.[5] Asimismo, declaró que por esa razón lo removió y reiteró que esto fue "por la cantidad de escritos" en contra del negocio de la apelada.[6] Incluso, puntualizamos que no existe controversia alguna en cuanto al hecho de que el mensaje en la red social "Facebook" fue publicado por ella.[7] De hecho, así lo admite la propia apelante durante el contrainterrogatorio.[8]

Por otro lado, la señora Rodríguez Castro testificó que fue con la apelante que sostuvo una conversación telefónica en la que "..., no me deja hablar. Ella empieza con los insultos, con las amenazas,

---

[5] Véase la TPO, a las págs. 64-65.
[6] Véase la TPO, a la pág. 66, línea 18.
[7] Véase la TPO, a la pág. 20, líneas 1-3, y el Exhibit 2 estipulado.
[8] Véase la TPO, a la pág. 58, líneas 5-8.

con que me va a hacer daño en las redes, que el negocio se me va a caer."[9] Agregó que "Ella me dijo en palabras soeces que yo me iba a **joder** en el negocio, que ella tenía su gente para hacerme daño. Y, obviamente, después de esa conversación ahí es que vino el bombardeo de las llamadas telefónicas mediante *Face Time* y en *WhatsApp*."[10] En consecuencia, el foro apelado concedió entera credibilidad al testimonio de la apelada e infirió que efectivamente la apelante cumplió su amenaza.

En nuestro ordenamiento evidenciario, la prueba indirecta o circunstancial es aquella que tiende a demostrar el hecho en controversia **probando otro distinto**, del cual por sí o, en unión a otros hechos ya establecidos, **puede razonablemente inferirse el hecho en controversia**. Además, es harto conocido como norma evidenciaria, que un solo testigo con conocimiento personal de la materia objeto del litigio que le merezca credibilidad al tribunal es suficiente para establecer cualquier hecho. Regla 110(D) de las de Evidencia, 32 LPRA Ap. IV, R. 110(D). Por tanto, los elementos de la causa de acción aquí instada quedaron demostrados mediante el testimonio de la señora Rodríguez Castro y las fotos admitidas en evidencia. Es decir, se probó que la información publicada por la apelante era falsa debido a que el bizcocho se encontraba en perfectas condiciones al ser entregado y los daños se produjeron durante su transporte; así como que la señora Reyes Rosario comenzó una ola de amenazas que afectaron emocionalmente a la apelada. Al respecto, en las determinaciones de hechos 9 y 10, el TPI estableció que: "La vida ordinaria de la [demandante] cambi[ó] por motivo de los ataques recibidos a su tranquilidad y reputación. Las llamadas sobre comentarios negativos alteraban sustancialmente su paz y tranquilidad. La vida de la parte demandante cambi[ó]

---

[9] Véase la TPO a la pág. 18, línea 25 y pág. 19, líneas 1-3.
[10] Véase la TPO a la pág. 19, líneas 11-14. Énfasis nuestro.

dramáticamente, lo que provocó que tuviera que cambiar su horario." Sobre este particular, no podemos obviar que así surge del testimonio de la apelada.[11]

De otra parte, es meritorio destacar que conforme al testimonio de la señora Rodríguez Castro **fue la apelante** quien ordenó el bizcocho e indicó las especificaciones tales como el tamaño, el color (*sage*) y que las flores fueran las llamadas "suculentas".[12] Surge, además, que otra persona recogió el bizcocho a eso de las 4 de la tarde. Enfatizamos que la apelante ni tan siquiera pudo demostrar cuál era la alegada diferencia en cuanto al color. Tampoco declaró que la flores fuesen otras.[13] En su testimonio, esta se limitó a decir que "estaba horrible", pero admitió que se lo comieron.[14] Más aun, del mensaje publicado, y admitido en evidencia, surge que alguien "arregl[ó]" el bizcocho.[15]

No podemos ignorar que la apelada lleva 31 años en el negocio de confección, decoración y venta de bizcochos. Asimismo, destacamos que la señora Rodríguez Castro declaró que siempre que entrega un bizcocho le toma fotos, y afirmó que el que se ve en la fotografía, Exhibit 1, fue el que entregó y en ningún momento "nos dijeron que estaba roto, que estaba dañado, ni nada, solamente el color sage."[16] En la determinación de hechos núm. 3 el foro *a quo* claramente formuló que "La demandante tom[ó] una foto antes de entregarlo. El bizcocho se encontraba en perfectas condiciones y de color similar al solicitado." Sobre este punto, coincidimos con esta expresión del TPI debido a que en la fotografía marcada como Exhibit 1 no observamos que el bizcocho presente algún deterioro visible en su forma. Se hace importante advertir que la representación legal de

---

[11] Véase la TPO, a las págs. 22-29.
[12] Véase la TPO, a la pág. 7, líneas 1-20.
[13] De hecho, se puede apreciar del Exhibit 2 que el bizcocho "arreglado" tiene unas flores y un color distinto a los ordenado por la apelante.
[14] Véase la TPO, a la pág. 55, línea 13 y pág. 57, líneas 16-18.
[15] Véase el Exhibit 2.
[16] Véase la TPO, a la pág. 12, líneas 7-25

la apelante, durante el contrainterrogatario de la señora Rodríguez Reyes, no impugnó el antedicho testimonio. Solo pudo lograr que la apelada aceptara que el color específico solicitado no se pudo lograr.

De otro lado, apuntalamos que la señora Reyes Rosario presentó, como prueba, únicamente su testimonio. Reconoció que el día que se recogió el bizcocho no llamó a la apelada para informarle que ese no era el color solicitado.[17] Por lo que, **falló en probar de forma afirmativa que la información publicada era verdadera y no difamatoria**.

En atención a todo lo antedicho, se hace importante enfatizar que la credibilidad de la prueba presentada constituyó un factor decisivo en las conclusiones de hechos determinadas por el foro *a quo*. Más aun, la parte apelante no minó la credibilidad de lo declarado por la señora Rodríguez Castro durante el juicio en su fondo, ni pudo demostrar que los hechos determinados por el TPI estuviesen huérfanos de apoyo en la evidencia presentada y aquilata. Por tanto, ante la ausencia de error, perjuicio o parcialidad, no procede nuestra intervención con la apreciación de la prueba, ni con la adjudicación de credibilidad efectuada por el TPI. El Magistrado que presidió el juicio fue quien observó la manera de declarar los testigos; así como pudo apreciar sus gestos, titubeos, contradicciones y todo su comportamiento mientras testificaban. Son estos factores los que formaron gradualmente en su conciencia la convicción sobre la verdad de lo declarado.

Por su parte, adelantamos que la apelante falló en impugnar adecuadamente la cuantía de daños concedidos. Veamos el por qué.

De entrada, se hace importante advertir que la señora Reyes Rosario, en su recurso, no cuestionó la cuantía concedida a la apelada ni el proceso de valoración que realizó el foro primario para

---

[17] Véase la TPO, a la pág. 56, líneas 23-25.

su determinación. Insistimos nuevamente en que, en este tipo de caso, es el foro primario el que tuvo contacto directo con la prueba testifical presentada y, por ende, el que estuvo en mejor posición de emitir un juicio sobre la valorización de los daños.[18] Este ejercicio valorativo "... descansa, en parte, en elementos subjetivos y de especulación que dependen -- en cierto grado -- del juzgador o la juzgadora de los hechos, motivado por un sentido de justicia y de conciencia humana."[19] Se trata de una tarea sumamente difícil, ardua y angustiosa, ya que no existen fórmulas científicas que provean un resultado exacto para indicar cómo se justiprecia el dolor y el sufrimiento causado. *Íd.*

Ahora bien, del testimonio de la apelada surge que las llamadas eran "*exageradas. Estuvieron más de, bueno, podría decir un mes con llamadas constantes hasta de madrugada. Que eso fue lo que me tuvo que dar el paso para hacer las querellas. No podía apagar mi teléfono de noche porque mi mamá vivía sola y está bien mala. Por eso es que no lo apagaba. Porque me decían, hasta los mismos agentes me decían "apaga el teléfono". No podía apagarlo. Pero eran llamadas constantes.*"[20] Añadió que "*... mi madre, una persona mayor, tenía el sistema del botoncito y el teléfono que estaba activado a ese botón era el mío.*"[21] También declaró que estaba viviendo con miedo y que eso la llevó a abrir su negocio a las 9:00 de la mañana en vez de las 7:00, y cerrarlo a las 5:00 de la tarde en vez de a las 7:00 de la noche.[22] Asimismo, afirmó que las llamadas se daban constantes en el día, de madrugada, más de quince (15) llamadas, la frecuencia se mantuvo por un mes.[23]

---

[18] Véase, *Sucn. Mena Pamias et al. v. Meléndez et al*, 2023 TSPR 108, a la pág.18.
[19] *Íd.*, a la pág. 12.
[20] Véase la TPO, a la pág. 22, líneas 11-16.
[21] Véase la TPO, a la pág. 32, líneas 19-20.
[22] Véase la TPO, a la pág. 23, líneas 1-3.
[23] Véase la TPO, a las págs. 31-32.

En consecuencia, a nuestro entender quedaron demostrados los sufrimientos y angustias mentales que vivió la apelada como consecuencia del acto perpetrado por la apelante. Reiteramos que la señora Rodríguez Castro tiene 31 años de experiencia en la confección de bizcochos y nunca había tenido un incidente como este.[24]

En conclusión, el primer error no se cometió. Del análisis de la TPO surge el acto negligente, la relación casual y los daños provocados. Destacamos que, en cuanto al argumento de que no hubo prueba de los daños al negocio, el foro apelado claramente resolvió, y citamos: "En cuanto a la p[é]rdida de ingreso, entendemos que la prueba desfilada no fue suficiente para realizar una determinación favorable sobre el particular."[25]

Respecto al segundo error, la apelante señaló que es improcedente la imposicion de los honorarios por temeridad dado que esta no podía cruzarse de brazos, ya que estaba convencida de que su actuación en forma alguna había causado un daño. Como indicamos, la evaluación de si ha mediado o no temeridad, **recae sobre la sana discreción del tribunal sentenciador** y sólo se intervendrá con ella en casos en que dicho foro haya abusado de tal facultad. En la *Sentencia* apelada surge que el TPI determinó la temeridad por entender que la señora Reyes Rosario pudo evitar el presente pleito. La temeridad se configura cuando una parte con su conducta promueve un pleito que se pudo obviar o lo prolonga innecesariamente.

Luego de examinada la TPO, concluimos que el foro apelado no abusó de su discreción al imponer la temeridad. Tampoco surgen del recurso apelativo argumentos que nos convenzan de que el raciocinio del TPI fuese incorrecto. Recalcamos que el foro primario

---

[24] Véase la TPO, a la pág. 27, líneas 21-25, y pág. 28, líneas 10-20.
[25] Véase el Apéndice del Recurso, Apéndice 3, a la pág. 5.

resolvió que "Cualquier daño recibido por el bizcocho ocurrió luego de que la demandante entregara el mismo". Lo que encuentra apoyo en la prueba presentada y no fue refutado por la apelante.

En consecuencia, el segundo error no fue incurrido por el foro primario.

**IV.**

Por los fundamentos expuestos, se confirma la *Sentencia* apelada.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones