Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| YOLANDA ECHEVARRÍA CORDERO, JOSÉ A. HERNÁNDEZ RODRÍGUEZ, YULIANIS HERNÁNDEZ ECHEVARRÍA<br><br>Recurridos<br><br>v.<br><br>AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS, **EMPRESA DE SERVICIOS MÚLTIPLES, LLC**, COMPAÑÍA A, B y C y OTROS<br><br>Peticionario | TA2026CE00208 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Aguada<br><br>Caso núm.: AU2025CV00601 (Sala 0002, Distrito y Superior)<br><br>Sobre: Daños, Caída |

Panel integrado por su presidente el juez Hernández Sánchez, el juez Rivera Torres y el juez Marrero Guerrero.

**Rivera Torres, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 12 de marzo de 2026.

Comparece ante este tribunal apelativo, Empresas de Servicios Múltiples, LLC (ESM o parte peticionaria) mediante la *Petición de Certiorari* de epígrafe solicitándonos que revisemos la *Resolución Interlocutoria* emitida por el Tribunal de Primera Instancia, Sala Superior de Aguada (TPI), el 29 de enero de 2026, notificada al día siguiente. Mediante este dictamen, el foro primario declaró *No Ha Lugar* a la *Solicitud de Desestimación* instada por la parte peticionaria.

Por los fundamentos que expondremos a continuación, expedimos el auto de *certiorari* solicitado y revocamos la determinación recurrida. En consecuencia, se desestima la demanda incoada en contra de la parte peticionaria.

**I.**

El 9 de octubre de 2025, la Sra. Yolanda Echevarría Cordero, el Sr. José A. Hernández Rodríguez y la Sociedad Legal de Gananciales compuesta por ellos y Yulianis Hernández Echevarría (en conjunto, los recurridos) instaron una demanda sobre daños y perjuicios en contra de la Autoridad de Acueductos y Alcantarillados (AAA) y Empresas de Servicios Múltiples, LLC, entre otros demandados. Estos alegaron que ESN es una compañía subcontratada para el mantenimiento y la limpieza de las instalaciones del Programa Especial de Nutrición Suplementaria para Mujeres, Infantes y Niños (WIC, por sus siglas en inglés). El 12 de septiembre de 2022, a las 2:00 de la tarde aproximadamente, mientras la Sra. Yolanda Echevarría Cordero (señora Echevarría Cordero), laboraba en las instalaciones del WIC en el pueblo de Aguada, y como parte de sus funciones, salió a botar la basura a los zafacones exteriores del establecimiento. Indicó que los mismos fueron movidos y relocalizados por los empleados y/o agentes de la AAA, por motivo de una reparación de un salidero de agua, y resbaló con el lodo acumulado y sufrió una caída producto de las excavaciones enfangadas.

Agregó que la AAA creó una situación peligrosa para los caminantes y como consecuencia de la caída, esta sufrió un impacto contundente en el costado, en el brazo y laceraciones en el cuerpo y fue sometida a tratamiento y cirugía por pérdida de movilidad de su hombro. Así, especificó que el accidente se debió a la única y exclusiva negligencia o a la negligencia contributiva de los codemandados.

Mencionó que acudió a la Corporación del Fondo del Seguro del Estado (CFSE) por instrucciones de ESM y, el ente gubernamental le advirtió que los daños no fueron producto de un accidente en el trabajo atribuible al patrono si no a los terceros, la

AAA. Ante ello, presentó un caso. Luego de trámites ante la CFSE, y posterior a una investigación, la agencia determinó que la ESM era un patrono no asegurado. Por lo que, señaló que la determinación de patrono no asegurado confiere al tribunal jurisdicción para atender la causa de acción de daños, a tenor con el Artículo 15, 11 LPRA sec. 16, de la Ley de Compensación por Accidentes del Trabajo, según enmendada. Además, especificó que la CFSE no se subrogó ni solicitó compensación a la AAA, a tenor con el Artículo 31, 11 LPRA sec. 32, del estatuto.

Por lo anterior, solicitaron al TPI condenara a los demandados, a pagar solidariamente, las cuantías detalladas en la demanda como indemnización de daños y perjuicios, más les concediera gastos, costas y honorarios de abogado.

El 5 de diciembre de 2025, ESM instó una *Solicitud de Desestimación*[1] en la que aceptó, entre otros hechos, a su entender bien argüidos en la demanda, que: se dedica a brindar servicios variados, pero en este caso, el servicio contratado era uno de limpieza mediante contrato con el Programa WIC; la señora Echevarría Cordero trabajó para ESM desde marzo del 2021 hasta el 1 de octubre de 2022 y ocupó el puesto de técnica de mantenimiento; esta se trasladó al pueblo de Aguada para brindar los servicios de limpieza contratados por el cliente WIC y allí se accidentó al botar la basura lo que era parte de sus labores; ella era la única empleada de ESM en el lugar; las únicas pertenencias de ESM en el área eran unos zafacones de basura colocados al exterior del edificio[2]; y el evento ocurrió en unas instalaciones que no

---

[1] Véase, el Sistema Unificado de Manejo y Administración de Casos del TPI (SUMAC TPI), Entrada núm. 13.

[2] En la nota al calce 3 del escrito se indica que, para efectos de este pedido desestimatorio, se presume este hecho como cierto. Sin embargo, aclaró que en los méritos se niega debido a que los zafacones eran propiedad del edificio. SUMAC TPI, Entrada núm. 13, a la pág. 3.

pertenecían, ni se encontraban bajo control o posesión del patrono, por alegados actos de un tercero, y no por personal de ESM.

Asimismo, expuso que los recurridos solo incluyen una alegación de derecho, pero sin base alguna en los hechos alegados, respecto a que la ESM es responsable por desatender, tener y mantener una condición peligrosa en el espacio de trabajo que puso en riesgo la integridad y la salud de la señora Echevarría Cordero. Además, señaló que en la demanda se establece que la CFSE determinó que sus lesiones no eran atribuibles a ESM, sino a terceros -los empleados de la AAA-.

Por lo cual, precisó que:[3]

> Por lo tanto, ESM no tuvo conocimiento ni control alguno sobre la causa próxima que provocó los daños de la Demandante, ni la Demandante alega ningún tipo de hechos sobre actos u omisiones negligentes o culposos atribuibles a ESM. Y es que, ante la total ausencia de comunicación por la propia Demandante con ESM sobre las circunstancias de peligrosidad sobrevenidas el día del accidente, la parte compareciente nada podía hacer para evitar el daño que finalmente se produjo. ESM no pudo tomar o solicitar medidas de seguridad para la Demandante, ni mitigar daños porque no tenía conocimiento alguno de la condición peligrosa surgida ese día en particular y que provocó el alegado accidente. Podrá ser negligencia faltar a un deber razonable de previsión, pero no el carecer de poderes de adivinación. Lisa y llanamente, ESM no tenía control sobre el lugar, o sobre la forma y manera en que se realizaron las labores de reparación del salidero de agua por la AAA; las que la Demandante identifica con exclusivas determinantes de las condiciones de peligrosidad que contribuyeron a su accidente. Según mencionado, la demandante tampoco se comunicó cuando vio o tuvo conocimiento de las reparaciones para informar a su patrono, ESM, sobre cualesquiera riesgos identificados o impedimentos para completar sus labores por la falta de acceso directo a los contenedores de basura de su propiedad.
>
> Lo anterior queda claro de las alegaciones de la Demanda, **pues no existe una sola alegación de hechos dirigida a la compareciente sobre presunta contribución o conocimiento de las situaciones de peligrosidad alegadas**. Al respecto, el mero hecho de que la demandante mencione a las "codemandadas" en los párrafos o que indique que la CFSE declaró a ESM como patrono no asegurado, no impone responsabilidad a la compareciente por los daños alegados pues, según discutimos abajo, ese estatuto no establece un precepto de responsabilidad absoluta. Ante la ausencia de alegaciones de hechos culposos o

---

[3] SUMAC TPI, Entrada núm. 13, a las págs. 4-5. Énfasis en el original.

negligentes de ESM que se relacionen con las condiciones de peligrosidad que se alega causaron el accidente, la Demanda debe de ser desestimada en [lo] referente a esta parte.

Asimismo, la parte peticionaria incluyó, como hechos adicionales, que el 21 de septiembre de 2021, extendió la póliza eventual de la CFSE Núm. 21-2-70-07963 cuya vigencia extendida era del 1 de octubre de 2021 al 30 de septiembre de 2022. Por lo que, la póliza eventual cubría la instalación en la que la señora Echevarría Cordero prestó servicios y estaba vigente para la fecha del accidente, 12 de septiembre de 2022.

ESM añadió que: el 1 de diciembre de 2022 ESM sometió el informe de patrono a la CFSE y omitió escribir el número de la póliza en el encasillado correspondiente del documento intitulado "Informe Patronal"; no recibió, a conocimiento de su gerente general, notificaciones o comunicaciones adicionales de la CFSE ni surge de los expedientes de Recursos Humanos notificaciones o comunicaciones adicionales de la CFSE sobre este caso hasta el 18 de octubre de 2024; el 17 de octubre de 2024, notificada el 18 posterior, la CFSE notificó a ESM de que la declaró patrono no asegurado; y aunque contaba con la póliza eventual que cubría los trabajos de la señora Echevarría Cordero y el local, ESM omitió recurrir oportunamente a la Comisión Industrial para apelar la determinación de patrono no asegurado.

Por tanto, expresó que la demanda debe ser desestimada contra ESM porque a dicho patrono compareciente le cobija la inmunidad patronal ofrecida por la Ley núm. 45-1935, *infra*, porque ESM, en efecto, era un patrono asegurado, y la póliza eventual estaba vigente para la fecha del accidente, 12 de septiembre de 2022.

El 3 de enero de 2026, los recurridos presentaron la oposición[4] al pedido desestimatorio en la que indicaron que existen alegaciones en contra de ESM que, aunque "no destilan que hubo ejecutorias departe de ESM, sí indica que hubo omisiones tendentes a mantener un espacio libre de peligros para su empleada."[5] Aclararon, además, que "...las alegaciones de la demanda recogen que hubo intervención con propiedad perteneciente a ESM, lo cual provocó una condición peligrosa que estimuló la caída." De igual manera, expresaron que la determinación de patrono no-asegurado por la CFSE es cosa juzgada. También expusieron que ESM detalló una relación de hechos que abarcan desde mociones que se presentaron en el expediente administrativo hasta alegaciones y escritos de la pasada demanda instada por ellos.

La parte peticionaria presentó una dúplica a la referida oposición en la que arguyó que el zafacón no es propiedad de la empresa. Agregó que "... en ausencia de alegaciones concretas contra ESM, respetuosamente sostenemos que pretender que se mantenga a un demandado en un litigio basado en una conjetura equivocada sobre la titularidad de un zafacón es una conducta temeraria de la demandante".[6] Así, reafirmó que no existen alegaciones de hechos contra ESM que justifiquen la concesión de un remedio a favor de los recurridos. También esbozó que un "patrono no asegurado (cosa que jurídicamente no era ESM) no se puede declarar automáticamente como responsable y, por tanto, no incurre en responsabilidad civil extracontractual, cuando existe una "ausencia de un nexo jurídico que relacione al patrono directo del obrero con el causante de la lesión".

---

[4] SUMAC TPI, Entrada núm. 18.
[5] SUMAC TPI, Entrada núm. 18, a la pág. 2.
[6] SUMAC TPI, Entrada núm. 19, a la pág. 2.

El 4 de febrero de 2026, la AAA presentó su *Contestación a Demanda*[7] aceptando algunas alegaciones y negando otras. En especial, señaló que dos días previos al accidente reparó un salidero en el lugar, colocó obstáculos para evitar que personas pisaran el lugar para prevenir accidentes y desde el área de donde se aproximaba la señora Echevarría Cordero, previo a sufrir la alegada caída, se observaba a simple vista el sitio y las condiciones del mismo. Por lo que esta fue negligente, ya que no actuó como requiere la figura jurídica de la persona prudente y razonable.

Analizados los escritos, el 29 de enero de 2026, notificada al día siguiente, el TPI emitió la *Resolución Interlocutoria* recurrida. Mediante esta, declaró *No Ha Lugar* a la *Solicitud de Desestimación* presentada por ESM.

Inconforme, la parte peticionaria acude ante esta *Curia* mediante el recurso de *certiorari* imputándole al foro primario haber incurrido en los siguientes errores:

> ERRÓ EL TPI AL NEGARSE A DESESTIMAR LA DEMANDA, A PESAR DE QUE LA MISMA CARECE DE ALEGACIONES DE HECHOS CONTRA ESM, SINO UNA MERA ALEGACIÓN DE DERECHO.

> ERRÓ EL TPI AL NEGARSE A DESESTIMAR LA DEMANDA APLICANDO ERRÓNEAMENTE LA JURISPRUDENCIA INTERPRETATIVA DE LA REGLA 10.2 DE PROCEDIMIENTO CIVIL, AL TOMAR COMO CIERTAS LAS ALEGACIONES DE DERECHO DE LA PARTE DEMANDANTE ANTE LA AUSENCIA DE ALEGACIONES DE HECHOS.

El 20 de febrero de 2026, emitimos uns *Resolución* en la que, entre otros dictámenes, le concedimos a la parte recurrida hasta el 5 de marzo de 2026 para expresarse. Llegado ese día, se cumplió con lo ordenado mediante escrito intitulado *Oposición a Expedición de Auto de Certiorari*. Así, nos dimos por cumplidos y a su vez, decretamos perfeccionado el recurso.

---

[7] SUMAC TPI, Entrada núm. 22.

Analizados los escritos de las partes y el expediente apelativo; así como estudiado el derecho aplicable, procedemos a resolver.

## II.

### Auto de *Certiorari*

El recurso de *certiorari* es el vehículo procesal discrecional disponible para que un tribunal apelativo revise las resoluciones y órdenes interlocutorias de un tribunal de inferior jerarquía. Regla 52.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1; *García v. Padró*, 165 DPR 324, 334 (2005). Todo recurso de *certiorari* presentado ante este foro apelativo deberá ser examinado primeramente al palio de la Regla 52.1 de las de Procedimiento Civil, *supra*. Dicha regla limita la autoridad y el alcance de la facultad revisora de este foro apelativo sobre órdenes y resoluciones dictadas por el foro de primera instancia, revisables mediante el recurso de *certiorari*. La referida norma dispone como sigue:

> Todo procedimiento de apelación, certiorari, certificación, y cualquier otro procedimiento para revisar sentencias y resoluciones se tramitará de acuerdo con la ley aplicable, estas reglas y las reglas que adopte el Tribunal Supremo de Puerto Rico.
> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, **solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo.** No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando **se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia**. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 de este apéndice sobre los errores no perjudiciales. Regla 52.1 de Procedimiento Civil, supra. [Énfasis Nuestro].

Por tanto, el asunto que se nos plantea en el recurso de epígrafe deberá tener cabida bajo alguna de las materias reconocidas en la Regla 52.1 de las de Procedimiento Civil, *supra.* Ello, debido a que el mandato de la mencionada regla dispone expresamente que solamente será expedido el auto de *certiorari* para la revisión de remedios provisionales, interdictos, denegatoria de una moción de carácter dispositivo, admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia y en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

Así, pues, para determinar si debemos expedir un auto de *certiorari,* debemos determinar primeramente si el asunto que se trae ante nuestra consideración versa sobre alguna de las materias especificadas en la Regla 52.1 de las de Procedimiento Civil, *supra.* Sin embargo, aun cuando el asunto esté contemplado por dicha regla, para determinar si procede la expedición de un recurso y poder ejercer sabiamente nuestra facultad discrecional, debemos acudir a lo dispuesto en la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 63, 215 DPR __ (2025), que dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Estos criterios sirven de guía para poder determinar, de manera sabia y prudente, si procede o no intervenir en el caso en la etapa del procedimiento en que se encuentra el caso. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008). Es decir, que el examen que emplea el foro apelativo no se da en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG*, 205 DPR 163, 176 (2020).

De otra parte, el ejercicio de las facultades del Tribunal de Primera Instancia merece nuestra deferencia, por tanto, solo intervendremos con el ejercicio de dicha discreción en aquellas instancias que se demuestre que el foro recurrido: (1) actuó con prejuicio o parcialidad; (2) incurrió en un craso abuso de discreción; o (3) se equivocó en la interpretación de cualquier norma procesal o de derecho sustantivo. *BBPR v. SLG Gómez-López*, 213 DPR 314, 334-335 (2023); *Ramos v. Wal-Mart*, 165 DPR 510, 523 (2006); *Rivera Durán v. Banco Popular de Puerto Rico*, 152 DPR 140,155 (2000).

**Regla 10.2 de las de Procedimiento Civil**

Una persona contra quien se haya presentado una reclamación judicial puede solicitar su desestimación cuando, de la faz de las alegaciones de la demanda, surja que alguna defensa afirmativa puede derrotar la pretensión del demandante. *Conde Cruz v. Resto Rodríguez et al*, 205 DPR 1043, 1077-1078 (2020); *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 701 (2012).

A tales efectos, la Regla 10.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, dispone lo siguiente:

Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva

excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada:

(1) Falta de jurisdicción sobre la materia;

(2) Falta de jurisdicción sobre la persona;

(3) Insuficiencia del emplazamiento;

(4) Insuficiencia del diligenciamiento del emplazamiento;

(5) Dejar de exponer una reclamación que justifique la concesión de un remedio;

(6) Dejar de acumular una parte indispensable;

[...] Si en una moción en que se formula la defensa (5) se exponen materias no contenidas en la alegación impugnada, y éstas no son excluidas por el tribunal, la moción deberá ser considerada como una solicitud de sentencia sumaria y estará sujeta a todos los trámites ulteriores provistos en la Regla 36 hasta su resolución final, y todas las partes deberán tener una oportunidad razonable de presentar toda materia pertinente a tal moción bajo dicha regla.

La citada regla establece los fundamentos para que una parte en un pleito pueda solicitar la desestimación de una demanda en su contra, mediante la presentación de una moción fundamentada en cualesquiera de los motivos en ella expuestos. *El Día, Inc. v. Mun. de Guaynabo*, 187 DPR 811, 820-821 (2013); *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 935 (2011). En lo pertinente, la Regla 10.2(5) de las de Procedimiento Civil, *supra*, dispone que el demandado puede fundamentar su solicitud en que la demanda no expone "una reclamación que justifique la concesión de un remedio". En tales casos, la desestimación solicitada se dirige a los méritos de la controversia y no a los aspectos procesales. *Montañez v. Hosp. Metropolitano*, 157 DPR 96, 104 (2002).

Ahora bien, para que proceda esta moción "tiene que demostrarse de forma certera en ella que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que se pudiese probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor." *BPPR v. Cable Media*, 2025 TSPR 1, 215 DPR ___ (2025); *Rivera San Feliz et al. v. Jta. Dir. First*

*Bank,* 193 DPR 38, 49 (2015); *Ortiz Matías et al. v. Mora Development,* 187 DPR 649, 654 (2013).

Asimismo, ante una moción de desestimación, bajo la antedicha norma, la demanda y sus alegaciones han de ser consideradas por el tribunal lo más liberalmente posible a favor de la parte demandante. El tribunal que evalúa la moción de desestimación debe concederle a la parte demandante el beneficio de toda inferencia posible que pueda surgir de la demanda.

Por su parte, nos explica el tratadista Cuevas Segarra que:

> Esta regla permite al demandado solicitar que se desestime la demanda en su contra, cuando entre otras razones ésta "no expone una reclamación que justifique la concesión de un remedio". A los fines de disponer de una moción de desestimación, el Tribunal está obligado a dar por ciertas y buenas todas las alegaciones fácticas de la demanda presentada. **El promovente tiene que demostrar que presumiendo que lo allí expuesto es cierto, la demanda no expone una reclamación que justifique la concesión de un remedio**. Esta doctrina se aplica solamente a hechos bien alegados y expresados de manera clara y concluyente, que de su faz no den margen a dudas. La demanda no deberá ser desestimada a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación. No se determinará si el demandante prevalecerá finalmente en el pleito, sino si el demandante tiene o no derecho a ofrecer prueba que justifique su reclamación, asumiendo como ciertos los hechos bien alegados en la demanda.
>
> [...]
>
> La controversia no es si el demandante va a finalmente prevalecer, sino, si tiene derecho a ofrecer prueba que justifique su reclamación, asumiendo como ciertos los hechos bien alegados en la demanda.

José Cuevas Segarra, *Tratado de Derecho Procesal Civil*, Publicaciones JTS, 2000, Tomo I, pág. 271 citando a *Davis y Monroe County Board of Ed.,* 143 LE 2d 839 (1999). (Énfasis nuestro)

Por ello, al evaluar una moción, al amparo de la Regla 10.2 de las de Procedimiento Civil, *supra*, cuando el promovente alega falta de parte indispensable, falta de jurisdicción o dejar de exponer una reclamación que justifique un remedio, ni el tribunal ni la parte demandada ponen en duda, para efectos de esa moción, los hechos alegados en la demanda porque se ataca por un vicio intrínseco de

esta o del proceso seguido. *Roldán v. Lutrón, S.M., Inc.*, 151 DPR 883, 890 (2000).

En fin, la desestimación de la reclamación judicial procede cuando surja de los hechos bien alegados en la demanda que la parte demandante no tiene derecho a remedio alguno. *Torres, Torres v. Torres et al.*, 179 DPR 481, 501 (2010). Para alcanzar dicha conclusión, es necesario que el tribunal considere ciertas todas las alegaciones fácticas que hayan sido aseveradas de manera clara en la demanda. *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank*, 193 DPR 38, 49 (2015); *Colón v. Lotería*, 167 DPR 625, 649 (2006).

**Daños y Perjuicios**

En nuestro ordenamiento jurídico, lo concerniente a la responsabilidad civil extracontractual, se rige por las disposiciones estatuidas en nuestro código civil y su jurisprudencia. Con relación a ello, el Artículo 1536 del Código Civil de Puerto Rico 2020, 31 LPRA sec. 10801, dispone que la persona que por culpa o negligencia cause daño a otra, viene obligada a repararlo. *Inmob. Baleares et al. v. Benabe et al.*, 214 DPR ___ (2024), 2024 TSPR 112. Para que prospere una reclamación por daños y perjuicios, al amparo del referido precepto legal, se requiere la concurrencia de tres elementos, los cuales tienen que ser probados por la parte demandante: (1) el acto u omisión culposa o negligente; (2) la relación causal entre el acto u omisión culposa o negligente y el daño ocasionado; y (3) el daño real causado al reclamante. *Inmob. Baleares et al. v. Benabe et al.*, supra; *Nieves Díaz v. González Massas*, 178 DPR 820 (2010).

El acto culposo o negligente se define como la falta del debido cuidado, según la figura de la persona de prudencia común y ordinaria. *López v. Porrata Doria*, 169 DPR 135, 150-151 (2006); *Gierbolini v. Employers Fire Ins. Co.*, 104 DPR 853, 860 (1976). Sobre la culpa, el más alto foro ha reiterado que consiste en no

anticipar las consecuencias racionales de un acto u omisión. *López v. Porrata Doria*, 169 DPR 135, 151 (2006); *Toro Aponte v. E.L.A.*, 142 DPR 464, 473 (1997). En cambio, la responsabilidad civil extracontractual producida por omisiones negligentes surge cuando el "[a]legado causante del daño quebranta un deber impuesto o reconocido por ley." *Hernández Vélez v. Televicentro*, 168 DPR 803, 813 (2006). En ese sentido, debemos tener presente que entre ese acto culposo o negligente y el daño causado se debe establecer un nexo causal adecuado. *Sucn. Mena Pamias et al. v. Mélendez et al.*, 212 DPR 758, 768 (2023); *Pérez et al. v. Lares Medical et al.*, 207 DPR 965, 976-977 (2021).

El daño constituye el menoscabo material o moral que sufre una persona, ya sea en sus bienes vitales naturales, en su propiedad o en su patrimonio, causado en contravención a una norma jurídica y por el cual ha de responder otra persona. En nuestro ordenamiento jurídico se reconoce la existencia de dos tipos de daños: los especiales, conocidos como daños físicos, patrimoniales, pecuniarios o económicos, y los generales, conocidos como daños morales. *Nieves Díaz v. González Massas*, supra, a la pág. 845.

Por último, en nuestro ordenamiento jurídico, ha sido reiterada en variadas ocasiones la doctrina de causalidad adecuada, la cual establece que no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general. *Sucn. Mena Pamias et al. v. Mélendez et al.*, *supra*, a la pág. 768; *Pérez et al. v. Lares Medical et al., supra,* a las págs. 976-977. Este concepto de la causa postula, además, que la ocurrencia del daño que da base a la reclamación era previsible dentro del curso normal de los acontecimientos. *López v. Porrata Doria,* supra, a la pág. 152.

**III.**

La parte peticionaria planteó que el TPI erró al negarse a desestimar la demanda, a pesar de que la misma carece de alegaciones de hechos en su contra, sino una mera alegación de derecho. A su vez, señaló que el foro *a quo* incidió al negarse a desestimar la demanda aplicando erróneamente la jurisprudencia interpretativa de la Regla 10.2 de las de Procedimiento Civil, al tomar como ciertas las alegaciones de derecho de los recurridos (como demandantes) ante la ausencia de alegaciones de hechos. Por estar relacionados los señalamientos de error entre sí, los discutiremos en conjunto.

De entrada, advertimos que la controversia aquí planteada está incluida en las instancias que esta *Curia* puede atender de conformidad a la Regla 52.1 de las de Procedimiento Civil, *supra,* y analizada al palio de los criterios de nuestra Regla 40, determinamos expedir el auto solicitado por ser el momento más propicio para atenderla y a su vez, evitamos un fracaso de la justicia.

Apuntalamos que ESM solicitó la desestimación de la causa de acción por entender que el reclamo de los recurridos no justifica la concesión de un remedio. Conforme surge del derecho antes citado, para que proceda el petitorio desestimatorio bajo el estándar de revisión de la Regla 10.2 (5) de las Reglas de Procedimiento Civil, *supra,* la parte peticionaria tenía que demostrar de forma certera que los recurridos no tienen derecho a remedio alguno bajo cualquier estado de derecho que se pudiese probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor. Por lo cual, el foro revisado debía considerar si, a la luz de la situación más favorable para los recurridos, y resuelta toda duda a su favor, la demanda no es suficiente para constituir una reclamación válida. Puntualizamos que, en este ejercicio, el tribunal debe conceder el beneficio al demandante de cuanta inferencia sea posible hacer de los hechos bien alegados en la demanda.

Ciertamente, de un análisis de las alegaciones de la demanda surge que, sin duda alguna, estas son insuficientes para constituir una reclamación válida en contra de ESM. De la misma notamos que no se incluyó una alegación específica respecto a negligencia o culpa imputada a ESM, por un acto u omisión de la empresa, que tuviese relación con la caída que la señora Echevarría Cordero sufrió al botar la basura en el exterior del local.

Enfatizamos, además, que de la demanda, y así lo reconocen los recurridos en la oposición a la *Solicitud de Desestimación* instada por ESM, solo se arguye que la parte peticionaria responde por culpa o negligencia por ser el propietario de los zafacones que los empleados de la AAA removieron afuera del local para obstaculizar el paso de los transeúntes en el área donde arreglaron el salidero de agua.

Recordemos que en dicha oposición estos especificaron diáfanamente que si bien las alegaciones de la demanda "**no destilan que hubo ejecutorias departe de ESM**, sí indica que hubo omisiones tendentes a mantener un espacio libre de peligros para su empleada".[8] Asimismo, expusieron que "... las alegaciones de la demanda recogen **que hubo intervención con propiedad perteneciente a ESM,** lo cual provocó una condición peligrosa que estimuló la caída." (Énfasis nuestro)

Por tanto, mantener a ESM, como codemandado por el simple hecho de que alegadamente los zafacones que cambiaron de lugar los empleados de la AAA para obstaculizar el paso en el área en donde arreglaron el salidero de agua son de su propiedad, resulta ser un proceder contrario a derecho.[9] Esto, máxime cuando en

---

[8] SUMAC TPI, Entrada núm. 18, a la pág. 2. Énfasis nuestro.
[9] En la demanda se alegó que:

> 11. La DEMANDANTE tuvo que pasar por el lado de la excavación debido a que los Co-DEMANDADOS, AAA, movieron y utilizaron el zafacón para prevenir el paso de vehículos con una cinta, promoviendo aún más la condición peligrosa para los caminantes. Esa condición peligrosa expuesta y creada por los Co-

ningún momento se aduce que la caída se debió a alguna condición o característica peligrosa intrínseca de los zafacones o por razón del ejercicio mismo al abrirlos o cerrarlos al botar la basura.[10] Más bien, se arguye que al haber movido los zafacones exteriores para usarlos como bloqueo para los vehículos y peatones de la zona se agravó la situación de peligrosidad. No obviemos que en la contestación a la demanda la AAA señaló que sus empleados corrigieron el salidero en el lugar y se colocó obstáculos para evitar que personas pisaran el lugar para prevenir accidentes.[11]

Por tanto, no existe una relación causal adecuada entre el daño y algún deber quebrantado por ESM. Así, pues, precisa subrayar que la demanda carece de alegación que le imponga responsabilidad a ESM por conocer el hecho de la reparación del salidero y las condiciones del terreno, ni que dio instrucciones para que se movieran los zafacones al lugar donde la señora Echevarría Cordero resbaló. Tampoco se aduce que la parte peticionaria tuviese bajo su control al área donde ocurrió la caída.

Por ende, coincidimos con lo expresado por la parte peticionaria en su escrito apelativo, a la pág. 6, respecto a que "…no existe duda de que la Demanda es una huérfana de alegaciones de hechos relacionados a actos u omisiones culposos o negligentes de ESM."

Relativo a lo antedicho, no podemos ignorar que los recurridos en su demanda adujeron que "18. La CFSE le indicó a la DEMANDANTE que los daños no fueron producto de un accidente en el trabajo atribuible al patrono si no a los terceros aquí Co-DEMANDADOS, AAA. Su caso en la CFSE se cerró y como

---

DEMANDADOS, AAA, provocó que la DEMANDANTE se resbalara, desbalanceara y cayera al pavimento.

[10] Esto tomando como hecho cierto que los zafacones le pertenecen a ESM.
[11] Apuntalamos que esto no constituye a que esta *Curia* esté adjudicando responsabilidad o concediendo la presente acción en daños.

consecuencia se presentó el caso *Echevarría et al. v. AAA, et al.*, AU2023CV00295."

Asimismo, reiteramos que, como bien señaló ESM ante el TPI, en la *Solicitud de Desestimación*, y citamos:

> Por lo tanto, ESM no tuvo conocimiento ni control alguno sobre la causa próxima que provocó los daños de la Demandante, ni la Demandante alega ningún tipo de hechos sobre actos u omisiones negligentes o culposos atribuibles a ESM. Y es que, ante la total ausencia de comunicación por la propia Demandante con ESM sobre las circunstancias de peligrosidad sobrevenidas el día del accidente, la parte compareciente nada podía hacer para evitar el daño que finalmente se produjo. ESM no pudo tomar o solicitar medidas de seguridad para la Demandante, ni mitigar daños porque no tenía conocimiento alguno de la condición peligrosa surgida ese día en particular y que provocó el alegado accidente. Podrá ser negligencia faltar a un deber razonable de previsión, pero no el carecer de poderes de adivinación.

Argumentos que ESM reafirma en el escrito ante nuestra consideración, los que no fueron adecuadamente refutados por los recurridos en su oposición. Además precisa destacar que la parte peticionaria, en su recurso, solo subraya que por haber sido declarado como patrono no asegurado por la CFSE, ello no implica que se le imponga responsabilidad absoluta como causante de los daños alegados. Por lo que, apuntalamos que es incorrecto argüir, como hacen los recurridos en su oposición, que ESM intenta plantear ante este foro intermedio la defensa de la inmunidad patronal como fundamento para solicitar la desestimación.[12]

En fin, el tribunal de primera instancia incurrió en los errores señalados y abusó de su discreción al denegar el petitorio desestimatorio instado por ESM.

**IV.**

Por los fundamentos antes expuestos, expedimos el auto de *certiorari* solicitado y revocamos la *Resolución Interlocutoria*

---

[12] Véase, *Oposición a Expedición de Auto de Certiorari*, a las págs. 8-9.

recurrida.  En consecuencia, se desestima la demanda instada por los recurridos en contra de ESM.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.




LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones